UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20014-CV-Ungaro     '08 CV 0545 BEN POR

American Residential Equities, LLC.

                    Plaintiff(s),          08 MAR 24 PM 1:41

v.                              CLERK, U.S. DISTRICT COURT
                                SOUTHERN DISTRICT OF CALIFORNIA
Del Mar Datatract, Inc., et al.,

                    BY:                    DEPUTY
                    Defendant(s),

FILED by _____ D.C.

**Mar 14, 2008**

Steven M. Larimore
CLERK U.S. DIST. CT.
S.D. OF FLA.


## CLERK'S NOTICE OF TRANSFER TO OTHER DISTRICT

Pursuant to the Order of Transfer entered on **3/12/2008**, the above-styled case is hereby transferred to the

**Southern District of California**.  Enclosed are certified copies of the Order of Transfer and the Court's docket

sheet.  The case record is  **[  ] a combined paper and electronic file or [  ] an electronic file**

and the imaged documents can be obtained at **PACER.USCOURTS.GOV** by using your Pacer **(not CM/ECF)**

login and password. If you do not have a pacer login, please contact the Pacer Center at 1-800-676-6856.

DONE at the Federal Courthouse, Southern District of Florida, Florida, this 14 day of March 2008.

STEVEN M. LARIMORE,
Court Administrator • Clerk of Court

By: _____

Deputy Clerk

---

**Please acknowledge receipt of this transfer by returning a time-stamped copy of this Notice to:**

United States District Court
Southern District of Florida
301 N. Miami Ave.
Room 150
Miami, FL 33028

Received By: _____

New Case No. _____

CLOSED, JJO

## U.S. District Court
### Southern District of Florida (Miami)
### CIVIL DOCKET FOR CASE #: 1:08-cv-20014-UU
### Internal Use Only

American Residential Equities, LLC v. Del Mar Datatrac, Inc et al
Assigned to: Judge Ursula Ungaro
Cause: 28:1332 Diversity

Date Filed: 01/03/2008
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

### Plaintiff

**American Residential Equities, LLC**
*a Delaware limited liability company*

represented by **Christopher John Greene**
Brant Abraham Reiter McCormick & Greene
50 North Laura Street
Suite 2750
Jacksonville, FL 32202
904-358-2750
Fax: 353-1166
Email: cjgreene@barmg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory Williamson**
Brant Abraham Reiter McCormick & Greene
50 North Laura Street
Suite 2750
Jacksonville, FL 32202
904-358-2750
Fax: 353-1166
Email: gawilliamson@barmg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Del Mar Datatrac, Inc**
*a California Corporation*

represented by **Adam Douglas Palmer**
Schoeppl & Burke
4651 N Federal Highway
Boca Raton, FL 33431-5133
561-394-5602
Fax: 394-3121
Email: apalmer@schoepplburke.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Defendant

**Fiserv, Inc.**
*a Wisconsin Corporation*

represented by **Adam Douglas Palmer**
(See above for address)
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/03/2008 | 1 | COMPLAINT against Del Mar Datatrac, Inc, Fiserv, Inc. Filing fee $ 350. Receipt#: 972538, filed by American Residential Equities, LLC.(ail) (Entered: 01/03/2008) |
| 01/03/2008 | 2 | Summons Issued as to Del Mar Datatrac, Inc, Fiserv, Inc.. (ail) (Entered: 01/03/2008) |
| 01/11/2008 | 3 | ORDER Scheduling Conference set for 4/4/2008 10:30 AM in Miami Division before Judge Ursula Ungaro.Signed by Judge Ursula Ungaro on 1/8/08.(lk) (Entered: 01/11/2008) |
| 01/18/2008 | 4 | CERTIFICATE OF SERVICE by American Residential Equities, LLC *of Summons and Complaint on Defendant FISERV* (Greene, Christopher) Modified on 1/22/2008 (ls). "Wrong Event Used, Re-docketed as Entry [5]; Summons Returned Executed". (Entered: 01/18/2008) |
| 01/18/2008 | 5 | SUMMONS Returned Executed Fiserv, Inc. served on 1/8/2008, answer due 1/28/2008. [See Image at DE #4](ls) (Entered: 01/22/2008) |
| 01/22/2008 | 6 | NOTICE of Docket Correction and Instruction to Filer: re 4 Certificate of Service filed by American Residential Equities, LLC, Error: Wrong Event Selected; Correction=Redocketed as Summons Returned Executed. Instruction to Filer=In the future please select the proper Event; (ls) (Entered: 01/22/2008) |
| 01/28/2008 | 7 | First MOTION for Extension of Time to File Response as to 1 Complaint by Del Mar Datatrac, Inc, Fiserv, Inc.. (Attachments: # 1 Text of Proposed Order)(Palmer, Adam) Modified on 1/29/2008 (ls). [Added relationship to DE #1].(Entered: 01/28/2008) |
| 01/29/2008 | 8 | NOTICE of Instruction to Filer: re 7 First MOTION for Extension of Time to File Response as to 1 Complaint filed by Fiserv, Inc.,, Del Mar Datatrac, Inc, Error: Wrong Event Selected; Instruction to Filer=In the future please select the proper Event, i.e. Motion for Extension of Time to File Response/Reply/Answer; (ls) (Entered: 01/29/2008) |
| 01/29/2008 | 9 | ORDER granting 7 Motion for Extension of Time to File answer to complaint on or before 2/15/08.Signed by Judge Ursula Ungaro on 1/29/08. (lk) (Entered: 01/29/2008) |
| 01/29/2008 | 10 | RESPONSE to Motion re 7 First MOTION for Extension of Time to File Response as to 1 Complaint filed by American Residential Equities, LLC. Replies due by 2/5/2008. (Greene, Christopher) (Entered: 01/29/2008) |
| 02/07/2008 | 11 | SUMMONS Returned Executed by American Residential Equities, LLC. Del Mar Datatrac, Inc served on 1/8/2008, answer due 1/28/2008. (Greene, Christopher) (Entered: 02/07/2008) |
| 02/14/2008 | 12 | NOTICE of Compliance by American Residential Equities, LLC re 3 Order, Set Deadlines/Hearings (Greene, Christopher) (Entered: 02/14/2008) |
| 02/15/2008 | 13 | Defendant's MOTION to Change Venue *and Alternative Motion to Dismiss, and incorporated Motion for Enlargement of Time, and Supporting Memorandum of Law* by Del Mar Datatrac, Inc, Fiserv, Inc.. Responses due by 3/3/2008 (Palmer, Adam) (Entered: 02/15/2008) |

| 02/20/2008 | ⊕14 | NOTICE of Instruction to Filer: re 13 Defendant's MOTION to Change Venue *and Alternative Motion to Dismiss, and incorporated Motion for Enlargement of Time, and Supporting Memorandum of Law* filed by Fiserv, Inc.,, Del Mar Datatrac, Inc, Error: Motion with Multiple Reliefs Filed as One Relief; Instruction to Filer=In the future please select all applicable Reliefs; (ls) (Entered: 02/20/2008) |
| --- | --- | --- |
| 03/03/2008 | ⊕15 | Unopposed MOTION for Extension of Time to File Response as to 13 Defendant's MOTION to Change Venue *and Alternative Motion to Dismiss, and incorporated Motion for Enlargement of Time, and Supporting Memorandum of Law and Incorporated Memorandum of Law* by American Residential Equities, LLC. (Williamson, Gregory) (Entered: 03/03/2008) |
| 03/04/2008 | ⊕16 | ORDER granting in part 15 Motion for Extension of Time to Respond to Defendant's Motion Responses due by 3/10/2008Signed by Judge Ursula Ungaro on 3/3/08. (ail) (Entered: 03/04/2008) |
| 03/10/2008 | ⊕17 | MEMORANDUM in Opposition re 13 Defendant's MOTION to Change Venue *and Alternative Motion to Dismiss, and incorporated Motion for Enlargement of Time, and Supporting Memorandum of Law* filed by American Residential Equities, LLC. (Williamson, Gregory) (Entered: 03/10/2008) |
| 03/12/2008 | ⊕18 | ORDER Granting Motion to Transfer Venue re: 13 Defendant's MOTION to Change Venue filed by Fiserv, Inc., Del Mar Datatrac, Inc.,; The Clerk of the Court is hereby DIRECTED to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action. Signed by Judge Ursula Ungaro on 3/12/08.(gp) (Entered: 03/13/2008) |
| 03/12/2008 | ⊕19 | Administrative Order Closing Case. All pending motions are DENIED as MOOT.Signed by Judge Ursula Ungaro on 3/12/08.(gp) (Entered: 03/13/2008) |

Certified to be a true and correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida

By _____ Deputy Clerk

Date 3/14/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES, LLC,

      Plaintiff,

v.

DEL MAR DATATRAC, INC., et al.,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE

THIS CAUSE is before the Court upon Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3), Fed. R. Civ. P., and Incorporated Motion for Enlargement of Time and Supporting Memorandum of Law, filed February 15, 2008 (D.E. 13). Plaintiff filed its Response in Opposition on March 10, 2008 (D.E. 17).

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this is an action arising out of Plaintiff's purchase of a custom software system from Defendants. (*See generally* Compl.) According to Plaintiff, Defendants made a number of representations regarding the software solution that they would provide to Plaintiff. (*See* Compl. ¶¶ 10-13.) Plaintiff alleges that such representations induced it to purchase the subject software solution from Defendants and that such representations were false when made. (*See* Compl. ¶¶ 14-22.) In connection with such purchase, the parties entered into a sales agreement (the "Sales Agreement"). (Compl. ¶ 16.)

Plaintiff filed the Complaint on January 3, 2008, alleging four causes of action: fraud in the inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count IV),[1] and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V).[2]  (*See generally* Compl.)  Defendants bring the instant Motion to transfer this action to a district court in California, pursuant to the forum selection clause that appears in the End User License Agreement ("EULA") between the parties.  (Defs.' Mot. 4.)

Section 1404(a) provides, in relevant part, that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  District courts have broad discretion over issues related to venue transfer.  *See, e.g., Del Monte v. Dole*, 136 F.Supp.2d 1271, 1281 (S.D. Fla. 2001).  Section 1404(a) is intended to allow the district court discretion to decide motions to transfer venue according to an "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  Moreover, the "presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  Indeed, "the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors."  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  The opponent of the motion to enforce a forum selection clause "bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute."  *Id.*

---

[1] Plaintiff appears to have erroneously styled its breach of contract claim as Count IV, despite the fact that there is no Count III.

[2] Plaintiff appears to have erroneously styled its violation of Florida's Deceptive and Unfair Trade Practices Act as Count V, despite the fact that there is no Count III.

Defendants first argue that the EULA contains a valid forum selection clause that applies

to the instant lawsuit. (Defs.'s Mot. 13-15.)  The Court agrees.[3]  In its Complaint, Plaintiff

alleges four causes of action which all relate to the Sales Agreement.  (*See generally* Compl. ¶¶

26-51.)  The fact that the Sales Agreement itself does not contain a forum selection clause is not

dispositive.  "A document may be incorporated by reference in a contract if the contract

specifically describes the document and expresses the parties' intent to be bound by its terms."

*Mgmt Computer Controls, Inc. v. Charles Perry Const.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999)

(citations omitted).  The contract must contain more than a mere reference to the collateral

document, but it need not state that it is "subject to" the provisions of the collateral document to

incorporate its terms.  *Id.* (citing *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA

1998) (holding that no particular "magic words" are required to incorporate a document by

reference).  It is sufficient that the general language of the incorporating clause reveals an intent

to be bound by the terms of the collateral document.  *Id.* (citing *Sharpe v. Lytal & Reiter, Clark,

Sharpe, Roca, Fountain, Williams*, 702 So.2d 622, 623 (Fla. 4th DCA 1997).

The Sales Agreement includes more than a mere reference to the EULA.  In fact, the

Sales Agreement makes clear that Plaintiff is expected to comply with and be bound by the

EULA as a condition to entering into the Sales Agreement.  Specifically, the Sales Agreement

states:

> "[Plaintiff] agrees to review, sign and comply with the End User License Agreement
> which will be presented to [Plaintiff] upon installation of the Licensed Program, a form of
> which is attached hereto as Addendum D. . . . The Sales Agreement together with all

---

[3] Indeed, Plaintiff does not appear to seriously dispute this argument, choosing to focus
almost entirely on the forum selection clause's applicability to the FDUTPA claim.  (*See* Pl.'s
Resp. 5-7.)

3

Addenda A, B, C and D, constitute the entire agreement of the parties on the subject matter hereof."

(Compl. Ex. A.)  This language demonstrates that the parties intended that the EULA and all of its provisions would become part of the Sales Agreement and would bind the parties.  The forum selection clause does not apply solely to disputes over the EULA, for once the EULA was properly incorporated by reference into the Sales Agreement, the Sales Agreement and all its addenda formed one document, to be read together.  *See Computer Sales Int'l, Inc. v. State Dep't of Revenue*, 656 So.2d 1382, 1384 (Fla. 1st DCA 1995).  Thus, the forum selection clause was properly incorporated by reference into the Sales Agreement.

Next, Defendants argue that the EULA's forum selection clause is mandatory.  (Defs.' Mot. 10-11.)  "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere.  A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'"  *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999)).  The Court has no doubt that the forum selection clause at issue in this case is mandatory.  The clause states, in pertinent part: "the courts located in San Diego, California, USA, will constitute the sole and exclusive forum for the resolution of any and all disputes arising out of or in connection with this EULA." (Compl. Ex. A, Addendum D.)  By these terms, the parties have expressed their intent to limit venue to one particular location: San Diego.

Additionally, Defendants claim that the forum selection clause applies not only to the breach of contract claim but also to other claims raised in the Complaint.  (Defs.' Mot. 12-13.)  As for the fraud in the inducement and negligent misrepresentation claims, because these claims

4

arose out of the contract, they are governed by the parties' agreement concerning venue. *See generally Mercedes Homes, Inc. v. Osborne*, 687 So.2d 840, 841 (Fla. 2d DCA 1996). The violation of FDUTPA claim, though, presents a more difficult decision, for it is an independent statutory claim that does not arise directly out of the contract.

Plaintiff argues that the forum selection clause cannot be enforced as to the FDUTPA claim because it would undermine the effectiveness of the statute (Pl.'s Resp. 6-7), relying upon the holding in *Mgmt Computer Controls, Inc.* 743 So.2d at 632. In *Mgmt Computer Controls, Inc.*, the court found that the venue selection clause placing venue outside of Florida could not be applied to the plaintiff's FDUTPA claim because, given that such claim neither arose out of the parties' contract nor existed solely for the benefit of the parties, enforcement of the venue clause would subvert the purposes of the statute. *Id.* However, Florida state courts interpreting *Mgmt Computer Controls, Inc.* have rejected the idea that such case created a *per se* rule against enforcing a forum selection clause as to FDUTPA claims. *See SAI Ins. Agency, Inc. v. Applied Systems, Inc.*, 858 So.2d 401, 404 (Fla. 1st DCA 2003); *World Vacation Travel, S.A. de C.V. v. Brooker*, 799 So.2d 410, 412-13 (Fla. 3d DCA 2001). Additionally, the Court does not believe that having a California court consider the FDUTPA claim would undermine the purposes of FDUTPA. Transferring this case to California would not deprive Plaintiff of the opportunity to pursue his claim for violation of FDUTPA. Moreover, courts in other states, such as California, are well-equipped to and quite capable of applying foreign law, including FDUTPA. *See, e.g., Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp. 240, 266-67 (S.D.N.Y. 2001) (considering a FDUTPA claim); *see also Golden Needles Knitting and Glove Co., Inc. v. Dynamic Marketing Enterprises, Inc.*, 766 F.Supp. 421, 430 (W.D.N.C. 1991) (same). Finally, the Court does not

5

believe that permitting the transfer of a FDUTPA claim pursuant to a valid forum selection clause would neither make future plaintiffs less likely to bring FDUTPA claims nor make persons or entities more likely to violate FDUTPA. In fact, allowing a FDUTPA claim to automatically defeat a valid forum selection clause would potentially wreak havoc on contractual rights, for the assertion of a FUDPTA claim, no matter how tangential or weak, could prevent a party from obtaining the full benefit of such party's bargained-for forum selection clause. A party would be able to nullify an unfavorable forum selection clause merely by bringing suit in Florida and alleging a violation of FDUTPA.

In this Circuit, forum selection clauses are broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract and to promote enforcement of those clauses consistent with the parties' intent. *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987). Clauses referencing "any lawsuit regarding this agreement" have been broadly construed to include extra-contractual claims. *See Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099, at \*2 (M.D. Fla. 2006) (citations omitted). Additionally, the Eleventh Circuit held that the clause in the *Ricoh Corp.* case, which referred to any "case or controversy arising under or in connection with this Agreement," covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." 810 F.2d at 1070. In the case at hand, the forum selection clause states that it governs "any and all disputes arising out of or in connection with this EULA." (Compl. Ex. A, Addendum D.) The language used in this forum selection clause is practically identical to that used in *Ricoh Corp.* Thus, the Court finds that the FDUTPA claim arises indirectly from the business relationship evidenced by the Sales Agreement, of which the EULA forms part, *see Ricoh Corp.*, 810 F.2d at

6

1070, and that, as such, the forum selection clause applies to the FDUTPA claim.

Finally, Defendants claim that an analysis of all relevant factors to be considered by this Court demonstrates that the forum selection clause should be enforced as written. (Defs.' Mot. 6-9.) Courts investigating whether to transfer venue in connection with a forum selection clause should consider convenience and fairness. *See Van Dusen*, 376 U.S. at 622. The presence of a valid forum selection clause dictates that Plaintiff bears the burden of demonstrating that the forum selection clause should not be enforced because of convenience or fairness considerations. *See In re Ricoh Corp.*, 870 F.2d at 573. Having reviewed the parties' briefs, the Court finds that Plaintiff has failed to carry its burden. Forcing Defendants, which are California and Wisconsin corporations, to litigate this action in Florida is as inconvenient to them as requiring Plaintiff, a Florida company, to litigate this action in California. Further, there has been no showing that the vast majority of witnesses or evidence is located in Florida. Finally, Plaintiff has not demonstrated that fairness considerations mandate allowing this action to proceed in Florida. Plaintiff has not alleged any fraud in connection with the negotiation of the forum selection clause, and there is no evidence that the parties did not negotiate at arms' length with roughly equal bargaining power. (*See* Defs.' Mot. 9.) Thus, the parties' forum selection clause shall be enforced as written and the entire case shall be transferred to the district court in San Diego, California. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Transfer Venue is GRANTED and the Motion to Dismiss is DENIED. The Clerk of the Court is hereby DIRECTED to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action to the San Diego division of the United States District Court for the Southern

7

District of California for all further proceedings.  It is further

ORDERED AND ADJUDGED that the Motion for Enlargement of Time is DENIED AS

MOOT and may be refiled in the proper court once the case has been transferred.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of March, 2008.


_Ursula Ungaro_
_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE


copies provided:
Counsel of Record

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U. S. District Court
Southern District of Florida
By _____
                    Deputy Clerk
Date  3/13/08

3/14/08 9P


8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability
Company,

       Plaintiff,

v.

DEL MAR DATATRAC, INC.,
a California Corporation, and FISERV,
INC., a Wisconsin Corporation,

       Defendants.

_____/

CASE NO.:

CIV-UNGARO

MAGISTRATE JUDGE
O'SULLIVAN

## COMPLAINT

Plaintiff, American Residential Equities, Inc. ("ARE"), sues Defendants, Del Mar
DataTrac, Inc. ("Del Mar") and Fiserv, Inc. ("Fiserv"), and states:

### THE PARTIES, JURISDICTION AND VENUE

1.      ARE is a limited liability company organized and existing under the laws of the
state of Delaware with its principal place of business in Miami-Dade County, Florida.

2.      Del Mar is a corporation organized and existing under the laws of the state of
California, with its principal place of business in San Diego, California.

3.      Fiserv is a corporation organized and existing under the laws of the state of
Wisconsin, with its principal place of business in Brookfield, Wisconson.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§1332(a) because there is complete diversity of citizenship between all of the plaintiffs and all of
the defendants, and the amount in controversy exceeds $75,000, exclusive of interest, cost and
attorney's fees.

5.      Del Mar and Fiserv are subject to personal jurisdiction in this Court pursuant to §48.193, Florida Statutes and otherwise because, among other things, they operate, conduct, engage in or carry out a business or business venture within the state of Florida and are engaged in substantial and not isolated activities within the state of Florida.

6.      All conditions precedent to this action have occurred, been waived or satisfied.

## COMMON ALLEGATIONS

7.      ARE is an investment company that specializes in acquiring, managing and liquidating undervalued first mortgage loans. Along those lines, ARE purchases discounted debt instruments (mortgages or deeds of trust) from companies in the business of originating such loans.

8.      Once the discounted loans are acquired, ARE outsources the primary servicing to multi-billion dollar national servicers, such as General Motors Acceptance Corporation ("GMAC"), who actually perform the work associated with servicing the loans. Overseeing and working in conjunction with these servicing companies, ARE provides all, or a portion, of the following services each time a portfolio of loans is acquired:

- Due Diligence/Portfolio Evaluations;

- Default Management and Loss Mitigation;

- Loan Servicing;

- Asset Evaluation;

- Loan Administration;

- Property Management;

- 2 -

- Closing Services; and

- Cash Management.

9.    In July or August of 2006, ARE decided that it would purchase a new software system that would allow it to perform these services more efficiently.  Since many of the loans in these portfolios would ultimately be transitioned to GMAC, it was critically important that the product that ARE ultimately purchased integrate seamlessly with GMAC's servicing software systems.

10.    On or about September 11, 2006, Del Mar, acting as an agent of Fiserv, made a proposal to ARE.  During the proposal, Del Mar represented that it had the capability to offer a custom solution to facilitate ARE's mortgage operations using Del Mar's DataTrac software system as a base product.

11.    According to Del Mar, the customized version of the DataTrac software system would allow ARE to gain control over its loan portfolios by centralizing data relating to underwriting, secondary marketing, documentation, funding, shipping, accounting and interim servicing and insuring.

12.    On a similar note, Del Mar promised that its solution was fast, easy and affordable.  Del Mar promised that its software solution could be implemented without operational downtime and that its suite of products was user-friendly, and little training would be required.

13.    More importantly, Del Mar represented that it could create an interface that would enable weekly boarding of ARE servicing information stored on the DataTrac software system to GMAC and daily updates of servicing information from GMAC to ARE into the DataTrac Software System.

- 3 -

14.     Del Mar's representations as described above were all integral to its proposal, and constituted material inducements for ARE to accept the proposal over those of other potential vendors.

15.     ARE only agreed to Del Mar's proposal because of the promised functionality and its assertion that the Del Mar software solution would provide ARE with an almost immediate return on investment.

16.     Based on Del Mar's representations as described above, ARE entered into a Sales Agreement with Del Mar, a copy of which is attached hereto as **Exhibit "A."**

17.     Almost immediately after entering into the Sales Agreement, it became apparent that Del Mar's representations concerning its own capabilities, the capabilities of its software system, and the ROI that ARE could expect from implementing Del Mar's software system were false when made.

18.     By way of example, despite the fact that Del Mar represented that it could create an interface that would enable weekly boarding of ARE servicing information stored on the DataTrac software system to GMAC and daily updates of servicing information from GMAC to ARE into the DataTrac Software System, after nearly a year into the implementation process, ARE still lacked the ability to download data from GMAC.

19.     On a similar note, despite the fact that Del Mar asserted it would create a custom developed solution to communicate with GMAC, this never happened.  Instead of building a custom solution, Del Mar simply tried repeatedly to use a previously designed or other made to order system that was not suitable to ARE.

20.     Furthermore, when confronted with the fact that its non-custom, previously designed system would not work, Del Mar did not provide the custom development solution

promised, and instead billed ARE for numerous custom reports that were not part of the agreement between the parties.

21.    Moreover, although Del Mar promised that its suite of products was user-friendly, and that little training would be required, ARE required literally weeks of training in order to use what proved to be an extremely cumbersome, illogical interface with its information using the Del Mar software system.

22.    ARE's operations and database reporting requirements are typical of mortgage investors such as ARE, and are not unique. Based on the representations that Del Mar made to induce ARE to enter into an agreement, Del Mar' software system should have been an easy fit with ARE. Unfortunately, however, those representations were false when made.

23.    In any event, despite the significant shortcomings in the software system platform that Del Mar ultimately delivered, ARE made numerous attempts to work with Del Mar to resolve the problems with the software product. Unfortunately, however, Del Mar ignored each of these efforts.

24.    Indeed, instead of collaborating with ARE to reach a mutually agreeable resolution, Del Mar and its principal, Fiserv, dunned ARE for the worthless software system platform. By way of example, a copy of a dunning letter from Joan Finnessy, Fiserv's Chief Financial Officer, is attached hereto as **Exhibit "B."**

25.    ARE has retained the undersigned attorneys, and is obligated to pay them a reasonable fee.

- 5 -

## Count I
### (Fraud in the Inducement)

26.    This is a claim for fraud in the inducement against Fiserv and its agent Del Mar.

27.    ARE restates and realleges the allegations of paragraphs 1-24 as if fully set forth herein.

28.    Del Mar made false statements described above in order to induce ARE to enter into a Sales Agreement to purchase a customized version of the DataTrac software system platform. At the time Del Mar made these representations, it was acting as an agent of Fiserv.

29.    Del Mar and its principal Fiserv knew that the representations described above were false when made.

30.    Del Mar and its principal Fiserv intended that ARE rely on the misrepresentations described above.

31.    ARE justifiably relied on the misrepresentations in entering the Sales Agreement.

32.    As a direct and proximate result of Defendants' conduct, ARE has suffered damages.

WHEREFORE, Plaintiff, ARE, demands judgment against Defendants, for damages, pre and post judgment interest, and such further relief as the Court deems proper and just.

## Count II
### (Negligent Misrepresentation)

33.    This is a claim for negligent misrepresenation against Fiserv and its agent Del Mar.

34.    ARE restates and realleges the allegations of paragraphs 1-24 as if fully set forth herein.

- 6 -

35.    Del Mar made false statements described above in order to induce ARE to enter into a Sales Agreement to purchase a customized version of the DataTrac software system platform. At the time Del Mar made these representations, it was acting as an agent of Fiserv.

36.    Del Mar and its principal Fiserv knew of the misrepresentations, made the misrepresentations without knowledge of their truth or falsity, and/or should have known the representations was false when made.

37.    Del Mar and its principal Fiserv intended that ARE rely on the misrepresentations described above.

38.    ARE justifiably relied on the misrepresentations in entering the Sales Agreement.

39.    As a direct and proximate result of Defendants' conduct, ARE has suffered damages.

WHEREFORE, Plaintiff, ARE, demands judgment against Defendants, for damages, pre and post judgment interest, and such further relief as the Court deems proper and just.

### Count IV
### (Breach of Contract)

40.    This is a claim for breach of contract against Del Mar.

41.    ARE restates and realleges the allegations of paragraphs 1-24 as if fully set forth herein.

42.    Del Mar entered into a Sales Agreement whereby it agreed to produce a customized software system that would allow ARE to service its mortgage portfolio effectively and efficiently.

43.    Del Mar failed to deliver such a software system and, by virtue of this failure, breached the Sales Agreement.

44.    As a direct and proximate result of Del Mar's conduct, ARE has suffered damages.

WHEREFORE, Plaintiff, ARE, demands judgment against Defendants, for damages, pre and post judgment interest, and such further relief as the Court deems proper and just.

## Count V
### (Violation of Florida's Deceptive and Unfair Trade Practices Act)

45.    This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act against Del Mar and Fiserv.

46.    Plaintiff restates and realleges Paragraphs 1 through 25 hereof as set forth verbatim.

47.    At all times material, ARE was a consumer as defined by Section 501.203(7), Florida Statutes.

48.    At all times material, Del Mar and Fiserv were engaged in "trade or commerce" as defined by Section 501.203(8), Florida Statutes.

49.    Section 501.204, Florida Statutes, provides:

Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

50.    Del Mar and Fiserv's activities as described above constitute unconscionable or deceptive acts or practices that are declared unlawful under Section 501.204, Florida Statutes.

51.    As a direct and proximate result of Del Mar and Fiserv's actions as alleged above, ARE has sustained, and continues to sustain, actual damages.

WHEREFORE, Plaintiff ARE demands a declaratory judgment declaring that Del Mar and Fiserv violated the Florida Deceptive and Unfair Trade Practices Act, an injunction enjoining Del Mar and Fiserv from future violations of the Act, actual damages caused by Del

Mar and Fiserv's violations of the Act, attorneys fees and costs in accordance with Section

501.211, Florida Statutes, and for any and all further relief that is proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff ARE respectfully demands a trial by jury on all issues so triable as a matter of

right.

Brant, Abraham, Reiter, McCormick & Greene, P.A.

Christopher J. Greene
Florida Bar No. 516015
cjgreene@barmg.com
Gregory Williamson
Florida Bar No. 0092990
gawilliamson@barmg.com
50 North Laura Street, Suite 2750
Jacksonville, Florida 32202
Mail: P.O. Box 4548 (32201-4548)
Telephone: (904) 358-2750
Facsimile: (904) 353-1166
Attorneys for Plaintiff

00040765.DOC/6256.1

# DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE)
## SALES AGREEMENT
### (INCLUDING ATTACHED ADDENDA AND OTHER WRITTEN MODIFICATIONS)

**CUSTOMER:**

| Company Name | AMERICAN RESIDENTIAL EQUITIES, ATTN: LARRY LEWIS |
|---|---|
| Address | 848 Brickell Avenue, Miami, FL 33131 |

Date of Sales Agreement: **9/25/2006** ("Effective Date")          Pricing good through: **9/30/2006**

**LICENSED PROGRAMS:**

| | DESCRIPTION | USERS | PURCHASE PRICE |
|---|---|---|---|
| ☒ | DataTrac® | 25 | $67,500 |
| ☐ | Additional Users ($1,500 per user) | | NOT INCLUDED |
| ☒ | DataTrac SQL Module (Requires MS SQL) | N/A | $15,000 |
| ☒ | Vendor Services Platform | | (See Addendum C) |
| **Total License Software Fees** | | | **$82,500** |
| **September Discount – 26%** | | | **( $21,500)** |
| **Net License Software Fees** | | | **$61,000** |

**IMPLEMENTATION SERVICES AND CONSULTING SERVICES:**
Standard two half-day implementation/training sessions ("Normal Sessions") are included. Any installation, implementation, consulting, training or other services provided by Del Mar Database in addition to Normal Sessions are described in Addendum B Part I. Customer will be responsible for any out-of-pocket expenses, such as travel, lodging, meals etc., associated with the Normal Sessions or any consulting or other services. A separate invoice will be prepared upon completion of such on-site services and will be due upon receipt. Such out-of-pocket expenses shall not exceed $0.

| | DESCRIPTION | PRICE |
|---|---|---|
| ☒ | Normal Sessions (two half-day, on-site implementation/training sessions and eight hours of online module training) | INCLUDED |
| ☒ | See Addendum B Part I for Consulting & Other Services: GMAC – DataTrac Integration | $20,000 |
| **Discount – 25%** | | **($5,000)** |
| **Net Implementation Service and Consulting Services** | | **$15,000** |

**CUSTOMER SUPPORT SERVICES:**
Customer hereby subscribes to Del Mar Database's annual Customer Support Services ("CSS") as detailed below commencing on the Effective Date. The Customer Support Services to be provided by Del Mar Database and the terms thereof are fully described in Addendum B attached hereto.

| DESCRIPTION | | INITIAL FEE |
|---|---|---|
| See Addendum B Part II | *Po# AMO 072204* | $13,680 |

**TOTAL CONTRACT:**

| TOTAL CONTRACT AMOUNT ("TCA"), NOT INCLUDING APPLICABLE SALES TAX | $89,680 |
|---|---|

**PAYMENT TERMS:**

*ARE, LLC*

- Deposit amount of 50% of TCA due and payable on the Effective Date

- Balance of TCA and applicable sales tax due and payable as follows:

The remainder of the TCA shall be due and payable upon the earlier occurrence of: (a) the completion of the Normal Sessions or (b) sixty (60) days after the Effective Date. Any payments which are overdue shall be subject to a late charge of 1.5% per month,

provided however that if the late payment charge exceeds the maximum amount permitted by law it shall be reduced to the maximum amount. Customer will be responsible for any taxes due in connection with any and all payments payable by Customer under this Agreement (excluding taxes based on Del Mar Database's net income). Customer acknowledges and understands that Del Mar Database has installed a feature in the licensed software that allows del mar database to prevent customer from using the licensed software in the event customer fails to pay the total contract amount when due and payable. Del Mar Database may implement such feature (without any advance warning notice) if customer does not make payments when due.

**EXCEPTIONS:**

☒ Exceptions to the Sales Agreement listed on Addendum A

☐ No Exceptions listed on Addendum A

**Customer agrees to review, sign and comply with the End User License Agreement which will be presented to Customer upon installation of the Licensed Program, a form of which is attached hereto as Addendum D.** This Sales Agreement may be executed in counterparts each of which shall be deemed an original and together shall constitute one instrument. The Sales Agreement together with all Addenda A, B, C and D, constitute the entire agreement of the parties on the subject matter hereof and supersedes all prior or contemporaneous written and verbal agreements. The Sales Agreement may only be modified by a writing signed by Customer and Del Mar Database (Del Mar Datatrac, Inc.).

Throughout the Sales Agreement and Addenda, Del Mar Datatrac, Inc. and Del Mar Database shall be deemed to be interchangeable as pertaining to the one and the same entity.

IN WITNESS WHEREOF, the parties, through their authorized representatives, have executed this Sales Agreement:

| CUSTOMER: AMERICAN RESIDENTIAL EQUITIES | DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE): |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: JEFFREY KIRSCH | NAME: STEVE JENKINS |
| TITLE: AMERICAN RESIDENTIAL EQ | TITLE: VP SALES |
| DATE: 9/27/06 | DATE: 9/27/06 |

## ADDENDUM A

## DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE)

**THE SALES AGREEMENT IS AMENDED AS FOLLOWS:**

**Payment Terms:**
If Del Mar Database received this executed sales agreement on or before 9/30/2006, the following non-standard payment terms will be applied to this sales agreement:

- $22,420 due on or before 9/30/2006
- $22,420 due upon user acceptance or 12/31/06, whichever comes first.
- $22,420 due on or before 1/31/2007
- $22,420 due on or before 2/28/2007

*Payment terms do not include sales/use taxes, which will be billed separately and are due upon receipt.

CUSTOMER: AMERICAN RESIDENTIAL EQUITIES          DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE):

SIGNATURE:                                       SIGNATURE:

## ADDENDUM B

### DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE)

### CUSTOMER SUPPORT AND IMPLEMENTATION SERVICES

PART I – CONSULTING AND OTHER SERVICES:

On-site training:

The Normal Sessions will include three half-day, on-site implementation/training sessions, not the standard two half-days, at no extra charge.

DataTrac Integration:

Del Mar Database Professional Services to provide integration between DataTrac and GMAC servicing data transfer. Please reference Statement of Work for details. Included in the price of the integration is one year of updates to maintain compatibility with future DataTrac releases.

PART II – CUSTOMER SUPPORT SERVICES:

CSS Discount:
For this sales agreement only the initial annual CSS fee has been discounted to $13,680 for all of the Licensed Programs listed on page one of this sales agreement. All other term and definitions are as defined below.

**Definition:** Customer Support Services ("CSS") includes fixes and enhancements to the Licensed Programs (as may be made available by Del Mar Database from time to time), access to customer support (hours of operation: 7AM – 5PM P.S.T.), access to the online "SupportTrac", including online support via FAQ's and other tools, if available. CSS does not include new product offerings, major product enhancements (as determined by Del Mar Database), online or on-site training beyond Normal Sessions, or consulting services.

**Terms:** The CSS fee will be charged on the Effective Date and thereafter on the anniversary date of the Effective Date (each a "Renewal Date") unless either party notifies the other party, in writing, thirty (30) days before the Renewal Date of such party's intent not to renew the CSS. The initial fee for the CSS shall be eighteen percent (18%) of the published list price for all the Licensed Programs listed on the Sales Agreement. The annual CSS renewal fee will be the then current annual fee for CSS of the then-current list price of the software listed on the Sales Agreement plus any additional software purchased after the Effective Date to be serviced under the CSS. CSS fees for additional software purchases will be prorated in the year of purchase. Del Mar Database will issue an invoice to Customer prior to each Renewal Date. Such invoice will be due and payable on the Renewal Date. Payment of the initial and annual CSS fees entitles Customer to receive the CSS and a software key that will allow the Licensed Programs to operate for twelve (12) months. If Customer properly notifies Del Mar Database, in accordance with the terms outlined above, of its intention not to renew the CSS, and/or Customer does not pay the appropriate CSS fees when due and payable, Customer is not entitled to receive and Del Mar Database is not obligated to perform the CSS. If Customer properly notifies Del Mar Database, in accordance with the terms outlined above, of its intention not to renew the CSS, Del Mar Database will provide Customer with a software key that will allow the Licensed Programs to operate perpetually.

CUSTOMER: AMERICAN RESIDENTIAL EQUITIES

SIGNATURE:

DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE):

SIGNATURE:

ADDENDUM C

DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE)

VENDOR SERVICES PLATFORM

LICENSED PROGRAMS:

| | DESCRIPTION | USERS | TRANSACTION FEES[1] |
|---|---|---|---|
| ⊠ | Vendor Services Client Server | VSP USERS ARE LIMITED TO THE NUMBER OF CUSTOMER'S VALID DATATRAC USER LICENSES | NO CHARGE |
| ⊠ | Freddie Mac LP | | $0.50 PER LOAN |
| ⊠ | Rate Spread Calculator | | NO CHARGE |
| ⊠ | DocMagic | | $0.50 PER UNIQUE WEBSHEET NUMBER GENERATED |
| ⊠ | MERs | | $0.50 PER LOAN |

(1) TRANSACTION FESS REPRESENT FEES PAYABLE TO DEL MAR DATABASE FOR USAGE OF THE RESPECTIVE VSP SERVICE. ADDITIONAL FEES MAY BE CHARGED TO CUSTOMER BY THE RESPECTIVE THIRD PARTY VENDOR (FREDDIE MAC, DOCMAGIC, MERS, ETC.) BASED ON THEIR RESPECTIVE CONTRACTS FOR SERVICES WITH CUSTOMER. PRICES SUBJECT TO CHANGE UPON THIRTY (30) DAYS NOTICE. THE TRANSACTION FEE PRICES LISTED WILL BE IN EFFECT FOR A PERIOD OF ONE (1) YEAR FROM THE EFFECTIVE DATE OF THIS SALES AGREEMENT. THEREAFTER, DEL MAR DATABASE MAY CHANGE THE TRANSACTION FEE PRICES UPON THIRTY DAYS WRITTEN NOTICE TO CUSTOMER.

CUSTOMER ACKNOWLEDGES AND UNDERSTANDS THAT DEL MAR DATABASE HAS INSTALLED A FEATURE IN THE LICENSED SOFTWARE THAT ALLOWS DEL MAR DATABASE TO PREVENT CUSTOMER FROM USING THE LICENSED SOFTWARE IN THE EVENT CUSTOMER FAILS TO PAY THE TOTAL TRANSACTION FEES WHEN DUE AND PAYABLE. DEL MAR DATABASE MAY IMPLEMENT SUCH FEATURE (WITHOUT ANY ADVANCE WARNING NOTICE) IF CUSTOMER DOES NOT MAKE PAYMENTS WHEN DUE.

VSP ADMINISTRATOR:

Customer must appoint a designated VSP Administrator by completing the information below. Client hereby authorizes the VSP Administrator to enable/disable the various VSP service offerings for customer, including any future service offerings that may be made available (at Del Mar Database's sole option and discretion) and which may include transaction fees in addition to those listed above. Customer may designate multiple VSP Administrators or change the name and/or contact information by contacting Del Mar Database Customer Support at (858) 550-8800 or by sending an email to support@delmardb.com.

| | |
|---|---|
| Contact Name: | |
| Contact Address: (street, city, state, zip) | |
| Contact E-mail Address: | |
| Contact Phone Number: | |

CUSTOMER: AMERICAN RESIDENTIAL EQUITIES          DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE):

SIGNATURE: _____          SIGNATURE: _____

## ADDENDUM D

### DEL MAR DATATRAC, INC.
### (DBA DEL MAR DATABASE)

### END USER LICENSE AGREEMENT

IMPORTANT- READ CAREFULLY: In connection with the "Sales Agreement" that has been executed between Del Mar Database ("DMD") and your company, you, as an authorized representative of your company agree to review and comply with the terms of this End User License Agreement ("EULA"). In this EULA, you and your company will be collectively referred to as the "Client." This EULA is a legal agreement between DMD and Client for the DMD Licensed Program(s) identified in the Sales Agreement, which includes computer software and may include associated media, printed materials, and "online" or electronic documentation, including the user's guide (collectively the "SOFTWARE PRODUCT"). For good and valuable consideration, the receipt and sufficiency of which you hereby acknowledge, you agree to be bound by the terms of this EULA.

1.  **License.** As consideration for DMD receiving the total contract amount and monthly VSP transaction fees, if applicable, (as detailed in the Sales Agreement), this EULA grants Client a personal, revocable, nonexclusive and nontransferable license to access and use the SOFTWARE PRODUCT. This SOFTWARE PRODUCT can only be used for the type and number of products expressly set forth in the Sales Agreement. Client agrees to keep confidential and use its best efforts to prevent and protect the contents of the SOFTWARE PRODUCT from unauthorized disclosure or use. DMD, its suppliers and licensors reserve all rights, title and interest to the SOFTWARE PRODUCT not expressly granted to Client under this EULA.

2.  **Scope of License.** The SOFTWARE PRODUCT is licensed solely for the Client's internal business use. This license gives Client the right to access and use the SOFTWARE PRODUCT solely for the type and number of products expressly set forth in the Sales Agreement. Each separate business entity is required to obtain a separate license from DMD for access to and use of the SOFTWARE PRODUCT. Client agrees to limit use of the SOFTWARE PRODUCT to the number of individuals for which Client has acquired a license from DMD as set forth in the Sales Agreement. In addition, Client agrees to provide technical or procedural methods to prevent use of the SOFTWARE PRODUCT by individuals not specifically licensed to use the SOFTWARE PRODUCT pursuant to this EULA (for avoidance of doubt individual means individual, not concurrent users). Client shall not use any software or hardware, including, but not limited to "multiplexing" or "pooling" software or hardware, to reduce the number of direct connections to the SOFTWARE PRODUCT from clients, workstations or computers. DMD is not required to provide any maintenance or support services with respect to the SOFTWARE PRODUCT unless otherwise noted on the Sales Agreement. Client is solely responsible for establishing and maintaining Internet connections to use the SOFTWARE PRODUCT, as well as for paying for, maintaining, and ensuring the compatibility with the SOFTWARE PRODUCT of all Web browser software, software licenses, and Internet Service Provider accounts as may be required in order for Client to access the SOFTWARE PRODUCT by means of an Internet connection. Client may make one (1) copy of the SOFTWARE PRODUCT for backup purposes if DMD's copyright notice is included.

3.  **Restrictions.** Client is not permitted, nor can Client allow any third party, to modify, translate, reverse engineer, decompile, disassemble (except to the extent applicable laws specifically prohibit such restrictions) or create derivative works based on the SOFTWARE PRODUCT, or any portion thereof. Client is not permitted, nor can Client allow any third party, to copy the SOFTWARE PRODUCT except as specifically provided by this EULA. The SOFTWARE PRODUCT is licensed as a single product. Client is not permitted, nor can Client allow any third party, to separate the SOFTWARE PRODUCT's component parts for any type of use whatsoever. Client is not permitted to sell, rent, lease, lend or otherwise transfer the SOFTWARE PRODUCT on a permanent or temporary basis. Client is not permitted, nor can Client allow any third party, to use the SOFTWARE PRODUCT through an application services provider, commercial hosting service, or other similar arrangement, except with DMD's prior written consent. Client is not permitted, nor can Client allow any third party to remove any proprietary notices, labels or trademarks on the SOFTWARE PRODUCT. Client is not permitted, nor can Client allow any third party, to use DMD's, its suppliers' and licensors' name, logos, or trademarks in any manner including, without limitation, in Client's advertising or marketing materials, except to the minimum extent necessary to affix the appropriate copyright or other proprietary notices as required herein. Client's access to some or all aspects of the SOFTWARE PRODUCT may require Client to use one or more passwords. To the extent the use of passwords is required for Client to access the SOFTWARE PRODUCT, Client agrees to maintain the confidentiality of those passwords at all times and not to disclose or share such passwords with any person or entity other than an employee of Client whose job duties and responsibilities require the use of the SOFTWARE PRODUCT. In order to assure that access to the SOFTWARE PRODUCT is limited to authorized persons and entities only, the passwords assigned to Client may be changed from time to time.

    Notwithstanding the generality of the foregoing, Client may allow any 3rd party service provider that is approved by DMD, whose approval shall not be unreasonably withheld, to access or use the SOFTWARE PRODUCT on its behalf. DMD shall have the right to require any such 3rd party service provider to execute any agreements necessary to preserve DMD's proprietary rights (e.g. non-disclosure agreement, etc.).

4.  **Accessibility.** Client acknowledges and agrees that from time to time the SOFTWARE PRODUCT may not be operable or accessible for any reason, including but not limited to hardware and/or software malfunctions, interruption of telecommunication services, periodic maintenance or repair procedures, as well as causes beyond the control of DMD or which are not reasonably foreseeable by DMD. While DMD shall make reasonable effort to ensure maximum Web hosting uptime, downtime will occur from time to time for maintenance and/or other reasons, and DMD makes no guarantee for specific uptime. DMD is not responsible for any damages arising from Client's use of DMD's Web hosting or by Client's inability to use DMD's Web hosting for any reason.

5.  **Upgrades.** If this version of the SOFTWARE PRODUCT is an upgrade from another version or other product, this license supersedes and replaces any previous license. Client may use the SOFTWARE PRODUCT only in conjunction with the upgraded product, unless Client destroys the upgraded product.

6. **Ownership and Copyright.** All title, copyrights, ownership rights, and other intellectual property rights in and to the SOFTWARE PRODUCT (including but not limited to any images, photographs, animations, video, audio, music, text, and "applets" incorporated into the SOFTWARE PRODUCT) and any copies thereof are vested in and shall remain in DMD, its suppliers and licensors. Client agrees that it neither owns nor hereby acquires any claim or right of ownership to the SOFTWARE PRODUCT or to any related patents, copyrights, trademarks or other intellectual property right. This license is not a sale of the original or any subsequent copy. The SOFTWARE PRODUCT is protected by the copyright laws and other intellectual property laws of the United States and international treaties. Client may not copy any documentation. Client may not copy the SOFTWARE PRODUCT (or this license) except as expressly permitted under this EULA. ANY AND ALL OTHER COPIES OF THE SOFTWARE PRODUCT MADE BY CLIENT ARE IN VIOLATION OF THIS EULA.

7. **Term and Termination.** Unless earlier terminated under this Section 7, this license will remain in effect as long as Client pays the total contract amount and monthly VSP transaction fees, if applicable, as detailed in the Sales Agreement. Client may terminate this EULA at any time by providing DMD with written notice of non-renewal pursuant to the terms of the Sales Agreement. Except as set forth in Section 8 below, all payments made by Client under this EULA are non-refundable. This EULA automatically terminates if Client fails to comply with the terms and conditions of this EULA, including, without limitation, making applicable payments when due. Client agrees that, upon termination of this EULA, Client will return any material Client received from DMD in connection with the SOFTWARE PRODUCT. Any payment obligation of Client, Sections 3, 9, 10, and 15, and any other term that contemplates continuing effectiveness shall survive any termination or expiration of this EULA.

8. **Limited Warranty.** DMD warrants only to Client that the SOFTWARE PRODUCT will materially conform to its user's guide for a period of ninety (90) days from the date that Client obtains the SOFTWARE PRODUCT from DMD (the "Warranty Period"). For any breach of the foregoing warranty that occurs during the Warranty Period, Client must inform DMD in writing thereof, including details regarding such non-conformance. DMD's SOLE LIABILITY AND CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR ANY BREACH OF THIS LIMITED WARRANTY IS FOR DMD, AT ITS SOLE OPTION AND DISCRETION, TO REPAIR OR REPLACE THE SOFTWARE PRODUCT, OR IF NEITHER OF THE FOREGOING IS COMMERCIALLY FEASIBLE, TO TERMINATE THIS EULA AND REFUND THE LICENSE FEES PAID BY CLIENT FOR THE NON-CONFORMING SOFTWARE PRODUCT. EXCEPT FOR THIS LIMITED WARRANTY, THE SOFTWARE AND THE DOCUMENTATION ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Some states do not allow the exclusion of implied warranties, so the above exclusion may not apply to Client. This warranty gives Client specific legal rights and it may also have other rights, which vary, from state to state.

9. **Limitation of Liability.** IN NO EVENT WILL DMD, ITS SUPPLIERS AND LICENSORS BE LIABLE FOR ANY INDIRECT DAMAGES OR OTHER RELIEF ARISING OUT OF CLIENT'S USE OR INABILITY TO USE THE SOFTWARE INCLUDING, BY WAY OF ILLUSTRATION AND NOT LIMITATION, LOST PROFITS, LOST BUSINESS OR LOST OPPORTUNITY, OR ANY SPECIAL, INCIDENTAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES ARISING OUT OF SUCH USE OR INABILITY TO USE THE SOFTWARE, EVEN IF DMD HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. IN NO INSTANCE WILL DMD'S CUMULATIVE LIABILITY EXCEED THE AMOUNT OF LICENSE FEES PAID BY CLIENT TO DMD DURING THE TWELVE (12) MONTH PERIOD IMMEDIATELY PRECEDING THE ACTION GIVING RISE TO LIABILITY. Some states do not allow the exclusion or limitations of incidental or consequential damages so the above limitation or exclusion may not apply to Client.

10. **Indemnity.** Client shall defend, indemnify and hold DMD and its officers, directors, employees, agents, licensors and suppliers (collectively, "DMD Indemnitees") harmless from and against any liabilities, costs, damages, or expenses (including, without limitation, attorney's fees and expert witness fees) suffered or incurred by any DMD Indemnitee in connection with any suit, demand, claim, or other legal action brought by a third party against such DMD Indemnitee arising from or relating to Client's use of or inability to use the SOFTWARE PRODUCT.

11. **Matters Expressly Not Included.** Client acknowledges and agrees that the SOFTWARE PRODUCT does not include, and that DMD will not provide to Client, any loan underwriting advice nor any assistance in originating or closing loans. DMD shall have no liability or responsibility whatsoever for any errors made by Client in the course of its lending activities, even if such errors are the result of Client's use of the SOFTWARE PRODUCT. This EULA does not establish an agency relationship between DMD and Client for any purpose, including but not limited to dealing with any third parties on behalf of Client. Client understands and acknowledges that Client is solely responsible for maintaining its own business relationship with the various third parties with which it deals, and that DMD has no obligation whatsoever under this EULA to communicate or otherwise deal with any third party for or on behalf of Client even as it may relate to Client's use of or inability to use the SOFTWARE PRODUCT.

12. **Third Party Service Provider Relationships.** The SOFTWARE PRODUCT may provide Client with access to various third party services. Client is required to provide DMD with written evidence that Client has a valid agreement with the respective third party service provider prior to accessing the respective third party service via the SOFTWARE PRODUCT.

13. **Hardware and Software Environment.** Client acknowledges and agrees that DMD may derive and maintain information regarding Client's hardware and/or software environment via the SOFTWARE PRODUCT.

14. **Export Controls.** Client is advised that SOFTWARE PRODUCT is subject to the U.S. Export Administration Regulations and diversion contrary to U.S. law is prohibited. Client agrees not to export, import or transfer SOFTWARE PRODUCT to any country which may be embargoed from time to time by the U.S. government, or contrary to U.S. or other applicable laws, and will not cause, approve or otherwise facilitate others such as agents or any third parties in doing so. Client represents and agrees that neither the United

States Bureau of Export Administration nor any other federal agency has suspended, revoked or denied Client's export privileges. Client agrees not to use or transfer SOFTWARE PRODUCT for end use relating to any nuclear, chemical or biological weapons, or missile technology unless authorized by the U.S. Government by regulation or specific license. Client understands that SOFTWARE PRODUCT contains encryption and may be subject to import and/or use restrictions in other countries. Client understands it is Client's ultimate responsibility to comply with any and all export and import laws and that has no further responsibility to Client after the initial export of SOFTWARE PRODUCT to Client from the United States.

15.  **General.** This EULA shall, for all purposes, be construed, governed and enforced solely and exclusively in accordance with the laws of the State of California, USA, without giving effect to its conflict of law provisions or Client's actual state of residence. Client hereby agrees that the courts located in San Diego, California, USA, will constitute the sole and exclusive forum for the resolution of any and all disputes arising out of or in connection with this EULA and Client hereby irrevocably consents to the personal jurisdiction and venue of such courts and irrevocably waives any objections thereto. Client hereby irrevocably consents to service of process for all actions in such courts. Any judgments obtained by such courts may be entered and enforced against Client in any jurisdiction where Client's assets are located. Notwithstanding anything in this EULA, DMD may, at any time seek injunctive relief to enforce its rights under this EULA in any court of competent jurisdiction. This EULA shall bind Client and its successors and assigns but shall not be assignable, sub licensable or delegable by Client except with DMD's prior written consent. Any such purported assignment, sublicense or delegation without such consent shall be void. This EULA shall bind and benefit DMD and its successors and assigns. If any provision of this EULA is determined to be invalid or unenforceable to any extent when applied to any person or circumstance, the remainder of this EULA and the application of such provision to other persons or circumstances or to another extent shall not be affected and shall remain in full force. No modification of this EULA will be effective unless in a subsequent writing signed by both parties. No waiver of any rights under this EULA will be effective, unless in writing and signed by both parties; and such waiver is only effective for the specific instance referenced in such writing. This EULA shall control over any conflicting provisions of any purchase order or other communication submitted by Client for the SOFTWARE PRODUCT and DMD hereby objects to any additional terms in any such purchase order or communication. Neither party shall be liable to the other under this EULA for any delay or failure to perform obligations under this EULA if such delay or failure arises from any cause(s) beyond such party's reasonable control, including by way of example labor disputes, strikes, acts of nature, floods, fire, lightning, utility or communications failures, earthquakes, vandalism, war, acts of terrorism, riots, insurrections, embargoes, or laws, regulations or orders of any governmental entity. This EULA together with the Sales Agreement incorporated by reference herein, constitutes the entire agreement between Client and DMD and supersedes any prior or contemporaneous written or oral agreement concerning the subject matter hereof.

16.  **U.S. Government Restricted Rights Legend.** The SOFTWARE PRODUCT is a "commercial item" as that term is defined at 48 C.F.R. 2.101; consisting of "commercial computer software" and "commercial computer software documentation" as such terms are used in 48 C.F.R. 12.212. Consistent with 48 C.F.R. 12.212 and 48 C.F.R. 227.7202-1 through 227.7202-4, all U.S. Government end users acquire the SOFTWARE PRODUCT with only those rights set forth therein.

| CUSTOMER: AMERICAN RESIDENTIAL EQUITIES | DEL MAR DATATRAC, INC. (DBA DEL MAR DATABASE): |
|---|---|
| SIGNATURE: | SIGNATURE: |
| NAME: JEFFREY KIRSCH | NAME: STEVE JENKINS |
| TITLE: AUTHORIZED SIGNATURE | TITLE: VP SALES |
| DATE: 01/27/07 | DATE: 9/27/06 |

Joan Finnessy
Chief Financial Officer
Del Mar DataTrac®

 | Lending
Solutions

October 22, 2007

Jeff Kirsch
American Residential Equities, LLC
848 Brickell Avenue
Miami FL 33131

Dear Mr. Kirsch:

Our records indicate that you are over 90 days past due on monies owed to Del Mar Database.

Past due balance over 90 days:  $8,335.61

Unpaid invoice(s) supporting this balance are attached.  You have 30 days to remit payment of this balance.  If payment is not received within 30 days, the invoice(s) will be sent to a creditor's rights law practice.  We value our client relationships but, as with any business, we also need to ensure we are executing according to reasonable business practice in our attempts to collect monies owed to us.

If you have any questions, please feel free to contact the individuals listed below for further information.

Sincerely,

Joan Finnessy
Chief Financial Officer
Fiserv Lending Solutions

cc:    Steve Jenkins, VP Sales - 858-526-7119
       David Lesnik, Financial Controller -574-245-9637
       Trang Nguyen, Senior Accountant – 858-526-7107

Attachments

# ᵗDel Mar Database

### *Another Fiserv Connection*
6165 Greenwich Drive, Ste. 200
San Diego, CA 92122

| PAGE NO. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO |
|---|---|---|---|---|
| 1 | 000007057 | | 03/29/2007 | AME40 |

## INVOICE

**SOLD TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

**SHIP TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

| DATE | CONTACT | | | RESP. CONSULTANT | TERMS |
|---|---|---|---|---|---|
| 03/29/2007 | | | | | Due on Receipt |

| DESCRIPTION | QTY/HOURS | UNIT PRICE/HOURLY RATE | EXTENSION |
|---|---|---|---|
| WEBINAR TRAINING: | | | |
| "SHIPPING, INSURING, & SRVICING" 3/22/07 | 1.00 | 150.00 | 150.00 |
| - CHRISTINA LLOYD | | | |
| ———————————— | | | |
| DUE                        03/29/07 | 150.00 | | |

| SUBTOTAL | STATE SALES TAX | Remit Payment to: | |
|---|---|---|---|
| · 150.00 | | Del Mar DataTrac, Inc. | 150.00 |
| | | 6165 Greenwich Dr. Ste. 200 | |
| For Questions Call: | | San Diego, CA 92122 | PLEASE REMIT |
| (858) 526-7107 | | | THIS AMOUNT |

Sales Copy

## Del Mar Database

*Another Fiserv Connection*
6165 Greenwich Drive, Ste. 200
San Diego, CA 92122

| PAGE NO. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO |
|---|---|---|---|---|
| 1 | 000007360 | | 04/30/2007 | AME40 |

# INVOICE

**SOLD TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

**SHIP TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

| DATE | CONTACT | | RESP. CONSULTANT | TERMS |
|---|---|---|---|---|
| 04/30/2007 | | | | Due on Receipt |

| DESCRIPTION | QTY/HOURS | UNIT PRICE/HOURLY RATE | EXTENSION |
|---|---|---|---|
| CONSULTING SERVICES | | | |
| ONSITE TRAINING COMPLETED 4/23/07 | 1.00 | 10000.00 | 10000.00 |
| CUSTOM ONLINE TRAINING COMPLETED 4/23/07 | 1.00 | 500.00 | 500.00 |
| | | | |
| DUE              04/30/07 | 10500.00 | | |

| SUBTOTAL | State Sales Tax | Remit Payment to: | |
|---|---|---|---|
| 10,500.00 | | Del Mar DataTrac, Inc. | 10,500.00 |
| For Questions Call: | | 6165 Greenwich Dr. Ste. 200 | PLEASE REMIT |
| (858) 526-7107 | | San Diego, CA 92122 | THIS AMOUNT |

Sales Copy

# Del Mar Database

*Another Fiserv Connection*
6165 Greenwich Drive, Ste. 200
San Diego, CA 92122

| PAGE NO. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO |
|----------|-------------|----------|--------------|---------|
| 1 | 000007519 | | 05/08/2007 | AME40 |

## INVOICE

**SOLD TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

**SHIP TO**
AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

| DATE | CONTACT | | RESP. CONSULTANT | TERMS |
|------|---------|--|------------------|-------|
| 05/08/2007 | | | | Due on Receipt |

| DESCRIPTION | | QTY/HOURS | UNIT PRICE/HOURLY RATE | EXTENSION |
|-------------|--|-----------|------------------------|-----------|
| TRAVEL EXPENSES - TRACY FARBER | | 1.00 | 419.15 | 419.15 |
| 4/9/07 - 4/13/07 | | | | |
| DUE | 05/08/07 | 419.15 | | |

| SUBTOTAL | State Sales Tax | | |
|----------|-----------------|--|--|
| 419.15 | | Remit Payment to: | 419.15 |

For Questions Call:
(858) 526-7107

Remit Payment to:
Del Mar DataTrac, Inc.
6165 Greenwich Dr. Ste. 200
San Diego, CA 92122

**PLEASE REMIT THIS AMOUNT**

Sales Copy

## Del Mar Database

*Another Fiserv Connection*

6165 Greenwich Drive, Ste. 200
San Diego, CA 92122

| PAGE NO. | INVOICE NO. | APPLY TO | INVOICE DATE | CUST NO |
|----------|-------------|----------|--------------|---------|
| 1 | 000007564 | | 05/18/2007 | AME40 |

# INVOICE

**SOLD TO**

AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

**SHIP TO**

AMERICAN RESIDENTIAL
EQUITIES, LLC
848 BRICKELL AVENUE
MIAMI FL 33131

| DATE | CONTACT | | RESP. CONSULTANT | TERMS |
|------|---------|--|------------------|-------|
| 05/18/2007 | | | | Due on Receipt |

| DESCRIPTION | QTY/HOURS | UNIT PRICE/HOURLY RATE | EXTENSION |
|-------------|-----------|------------------------|-----------|
| TRAVEL EXPENSES - TRACY FARBER | 1.00 | 91.46 | 91.46 |
| ONSITE 4/23/07 | | | |
| DUE                    05/18/07 | 91.46 | | |

| SUBTOTAL | State Sales Tax | | | |
|----------|-----------------|--|--|--|
| 91.46 | | | | 91.46 |

Remit Payment to:
Del Mar
75 Remittance Drive Suite 1470
Chicago IL 60675-1470

For Questions Call:
(858) 526-7107

**PLEASE REMIT
THIS AMOUNT**

Sales Copy

08-20014

**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS
AMERICAN RESIDENTIAL EQUITIES, LLC

**DEFENDANTS**
DEL MAR DATATRAC, INC. and FISERV, INC.

**(b)** County of Residence of First Listed Plaintiff   Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Brant, Abraham, Reiter, McCormick & Greene, P.A.
50 N. Laura Street, Suite 2750, Jacksonville, FL 32202
Telephone: (904) 358-2750

Attorneys (If Known)

MAGISTRATE JUDGE
O'SULLIVAN

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)
☐ 2  U.S. Government Defendant

Dade 1: 08CV20014 UUB O'sullivan

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☑ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO

JUDGE ___   DOCKET NUMBER ___

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

This is a case arising under the Florida Deceptive and Unfair Trade Practices Act and the Court has jurisdiction over this matter pursuant to 28 U.S.C. §1 332/a).

LENGTH OF TRIAL via **3** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $   75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   12-27-07

1/3/07

**FOR OFFICE USE ONLY**
AMOUNT 350.00   RECEIPT # 972538   IFP

AO 440 (Rev. 10/2002) Summons in a Civil Case

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: 08 20014

AMERICAN RESIDENTIAL
EQUITIES, LLC

                              Plaintiff

    v.

DEL MAR DATATRAC, INC. and                    **CIV-UNGARO**
FISERV, INC.
                              Defendant

### SUMMONS IN A CIVIL CASE

MAGISTRATE JUDGE
O'SULLIVAN

TO: (Name and address of defendant)

FISERV, INC.
c/o Corporation Service Company
Registered Agent
1201 Hays Street, Suite 2
Tallahassee, FL 32301-2525
Telephone: (850) 521-1000

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher J. Greene, Esq.
Gregory Williamson, Esq.
BRANT, ABRAHAM, REITER, McCORMICK & GREENE, P.A.
50 N. Laura Street
Suite 2750
Jacksonville, FL 32202
Telephone: (904) 358-2750

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**Clarence Maddox**
_____            1/2/08
CLERK OF COURT                              DATE

Martha D Pabon
_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/2002) Summons in a Civil Case

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: _____

AMERICAN RESIDENTIAL
EQUITIES, LLC

                    Plaintiff

    v.

DEL MAR DATATRAC, INC. and
FISERV, INC.

                    Defendant

**CIV-UNGARO**

**MAGISTRATE JUDGE**
**O'SULLIVAN**

### SUMMONS IN A CIVIL CASE

TO: (Name and address of defendant)

DEL MAR DATATRAC, INC.
c/o CSC - Lawyers Incorporating Service
Registered Agent
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA  95852
Telephone:  (961) 641-5100

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher J. Greene, Esq.
Gregory Williamson, Esq.
BRANT, ABRAHAM, REITER, McCORMICK & GREENE, P.A.
50 N. Laura Street
Suite 2750
Jacksonville, FL  32202
Telephone:  (904) 358-2750

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

**Clarence Maddox** _____          _1/2/08_ _____

CLERK OF COURT                                        DATE

_Martha D Pabon_

(BY) DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO: 08-20014-CIV-UNGARO**

AMERICAN RESIDENTIAL EQUITIES,
et al
                Plaintiff,

v.

DEL MAR DATATRAC INC
et al
                Defendant.
-------------------------------------------/

## ORDER SETTING INITIAL PLANNING AND SCHEDULING CONFERENCE

**THIS CAUSE** is hereby set for an Initial Planning and Scheduling Conference before the

Honorable Ursula Ungaro, at the United States Courthouse, 301 North Miami Avenue, 11th Floor,

Miami, Florida, on **Friday, APRIL 4TH, 2008 at 10:30 A.M.**

Counsel for the Plaintiff(s) is instructed to provide copies of this order to all counsel of

record and to any unrepresented parties that have appeared in the case.  Pursuant to Fed.R.Civ.P.

26(f) and Local Rule 16.1B, the parties are jointly responsible for conferring to develop a proposed

discovery plan; thereafter, the parties are to file and serve a Joint Planning and Scheduling Report,

together with a proposed Scheduling Order, and an attached service list including the parties' names,

phone numbers and facsimile numbers.  The report and proposed order must be filed by **MARCH**

**21ST, 2008** and must recite the following:

1.    A plain statement of the nature of the claim and any counterclaims, cross-claims, or third-party claim, including the amount of damages claimed and any other relief sought.

2.    A brief summary of the facts which are uncontested or which can be stipulated to without discovery.

3.    A brief summary of the issues as presently known.

4.    Whether discovery should be conducted in phases or limited to particular issues.

5.    A detailed schedule of discovery for each party.

6.    Proposed deadlines for joinder of other parties and to amend the pleadings, to file and hear motions and to complete discovery.

7.    Proposed approximate dates for final pre-trial conferences and trial.

8.    The projected time necessary for trial and a statement of whether the case is jury or non-jury trial.

9.    A list of all pending motions, whether each motion is "ripe" for review, the date each motion became ripe, and a summary of the parties' respective positions with respect to each ripe motion.

10.    Any unique legal or factual aspects of the case requiring special consideration by the Court.

11.    Any potential need for references to a special master or magistrate.

12.    The status and likelihood of settlement.

13.    Such other matters as are required by Local Rule 16.1(B) and as may aid the Court in setting the case for status or pretrial conference and in the fair and expeditious administration and disposition of this action.

With respect to initial disclosures required under Fed. R. Civ. P. 26(a)(1)-(2), pursuant to Rule 26(a), the disclosures must be made at or before the time the parties confer to develop the discovery plan. The parties must certify in the Joint Scheduling Report that such disclosures have been made unless a party objects during the conference that the required disclosure(s) is not appropriate in the circumstances of the action and files an objection to the specific disclosure(s) with the Court. Such objections must be filed no later than fifteen (15) days prior to the Initial Planning and Scheduling Conference and must include a full explanation of the basis for the objections.

In the event that motions are pending before the Court at the time of the Conference, the

2

parties shall be prepared to argue, at the Court's discretion, the merits of such motions.

In the event the Court issues a Scheduling Order prior to the Initial Planning and Scheduling Conference based on the information provided by the parties in their Joint Planning and Scheduling Report, the Court will notify the parties whether the Conference will be canceled.

DONE AND ORDERED this _____ day of JANUARY, 2008, at Miami, Florida.

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

cc: all counsel of record

3

**RETURN OF SERVICE**

# UNITED STATES DISTRICT COURT
## Southern District of Florida

Case Number: CIV-UNGARO

Plaintiff:
**American Residential Equities, LLC**

vs.

Defendant:
**Del Mar Datatrac, Inc. and Fiserv, Inc.**

For:
Christopher Greene
Brant, Abraham, Reiter, McCormick & Gree
50 North Laura Street
Ste 2750
Jacksonville, FL 32202

Received by Front Range Legal Process Service on the 7th day of January, 2008 at 4:31 pm to be served on **Fiserv, Inc., C/O Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

I, Michael C. Nolan, do hereby affirm that on the **8th day of January, 2008 at 9:50 am, I:**

**CORPORATE:** served by delivering a true copy of the **Summons in a Civil Case and Complaint with Exhibits** with the date and hour of service endorsed thereon by me, to: **Gwen Butler** as **Operations Specialist Accepting Service** for **Fiserv, Inc.**, at the address of: **C/O Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.  Under penalty of perjury I declare that the facts contained herein are true to the best of my knowledge.NO NOTARY REQUIRED PURSUANT TO F.S. 92.525(2).

Michael C. Nolan
Certified Process Server, #111

**Front Range Legal Process Service**
**826 Roma Valley Drive**
**Fort Collins, CO  80525**
**(888) 387-3783**

Our Job Serial Number: 2008000143

Copyright © 1992-2006 Database Services, Inc. - Process Server's Toolbox V6.2a

AO 440 (Rev. 10/2002) Summons in a Civil Case

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: _____

AMERICAN RESIDENTIAL
EQUITIES, LLC

                          Plaintiff

    v.

DEL MAR DATATRAC, INC. and
FISERV, INC.

                          Defendant

CIV-UNGARO

### SUMMONS IN A CIVIL CASE

MAGISTRATE JUDGE
O'SULLIVAN

TO: (Name and address of defendant)

FISERV, INC.
c/o Corporation Service Company
Registered Agent
1201 Hays Street, Suite 2
Tallahassee, FL 32301-2525
Telephone: (850) 521-1000

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher J. Greene, Esq.
Gregory Williamson, Esq.
BRANT, ABRAHAM, REITER, McCORMICK & GREENE, P.A.
50 N. Laura Street
Suite 2750
Jacksonville, FL 32202
Telephone: (904) 358-2750

an answer to the complaint which is herewith served upon you, within _____20_____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

**Clarence Maddox**
_____          _____1/2/08_____
CLERK OF COURT                                         DATE

_____
(BY) DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL
EQUITIES, LLC,

        Plaintiff,

vs.

DEL MAR DATATRAC, INC. and
FISERV, INC.,

        Defendants.

_____/

### DEFENDANTS, DEL MAR DATATRAC, INC. AND FISERV, INC.'S MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFF, AMERICAN RESIDENTIAL EQUITIES, LLC'S COMPLAINT

        Defendants, Del Mar Datatrac, Inc. and Fiserv, Inc. (collectively, **"Defendants"**), by and through their undersigned counsel, move this Court for the entry of an Order enlarging the time within which they must respond to the Complaint filed by Plaintiff, American Residential Equities, LLC (**"ARE"**), and in support thereof states:

        1.     This is a *Motion for Enlargement of Time* asserted for good cause pursuant to Local Rule 7.1.

        2.     On or about January 2, 2008, ARE initiated this action against Defendants. The Complaint asserts claims for Fraud in the Inducement (Count I), Negligent Misrepresentation (Count II), Breach of Contract (Count III, mis-numbered Count IV),

1

and Violation of Florida's Deceptive and Unfair Trade Practices Act (Count IV, mis-numbered Count V).

3.      The Defendants' response to the Complaint is due on January 28, 2008.

4.      There is good cause for granting Defendants a short enlargement of time to respond to the Complaint. The undersigned was just recently retained on January 23, 2008 and did not receive a complete file in this matter until January 24, 2008. Due to the complicated nature of the issues raised in the Complaint and due to the undersigned's very recent retention and busy litigation schedule, the Defendants respectfully request a short enlargement of time in order to properly investigate the facts and to analyze the various legal claims asserted and available defenses. Specifically, Defendants would request an enlargement of time through and including Friday, February 15, 2008 within which to serve a response to the Complaint.

5.      The instant request for an enlargement of time is not interposed for purposes of delay, but rather to ensure a reasonable amount of time to prepare and file a proper response to the Complaint.

6.      Undersigned counsel has contacted counsel for ARE who has not yet advised whether he has any objection to this request for enlargement of time.

2

**WHEREFORE**, Defendants, Del Mar Datatrac, Inc. and Fiserv, Inc., respectfully requests that this Court grant this Motion and enter an order providing Defendants with an enlargement of time to respond to the Complaint through and including February 15, 2008, together with such relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of January, 2008, I electronically filed the foregoing *Motion for Enlargement of Time* with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record:  **Christopher J. Greene, Esquire**, Brant, Abraham, Reiter, McCormick & Greene, PA, 50 North Laura Street, Suite 2750, Jacksonville, FL 32202.

**SCHOEPPL & BURKE, PA**
Counsel for Defendants
4651 North Federal Highway
Boca Raton, FL 33431
Telephone:    561-394-5602
Facsimile:    561-394-3121
apalmer@schoepplburke.com


By:_____
    **Adam D. Palmer, PA**
    Florida Bar No. 735220

3

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 08–20014–CIV–UNGARO / O'SULLIVAN

AMERICAN RESIDENTIAL
EQUITIES, LLC,

        Plaintiff,

vs.

DEL MAR DATATRAC, INC. and
FISERV, INC.,

        Defendants.

_____/

### ORDER GRANTING DEFENDANTS, DEL MAR DATATRAC, INC. AND FISERV, INC.'S MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFF, AMERICAN RESIDENTIAL EQUITIES, LLC'S COMPLAINT

THIS CAUSE came before the Court on Defendants, Del Mar Datatrac, Inc.'s and Fiserv, Inc.'s, Motion for Enlargement of Time to Respond to Plaintiff, American Residential Equities, LLC'S Complaint, and the Court having reviewed the Motion and being otherwise fully advised in the premises, it is Ordered and Adjudged as follows:

Defendant's Motion is granted.  The Defendants shall serve their response to the Plaintiff's Complaint on or before February 15, 2008.

        DONE AND ORDERED in the Miami, Florida, on this _____ day of _____, 2008.

                _____
                URSULA M. UNGARO-BENAGES
                UNITIED STATES DISTRICT JUDGE

1

Copies to:

**Adam D. Palmer, Esquire**
**Schoeppl & Burke, P.A.**
Counsel for Defendants
4651 North Federal Highway
Boca Raton, FL 33431
Telephone:    561-394-5602
Facsimile:    561-394-3121
apalmer@schoepplburke.com

And

**Christopher J. Greene, Esquire**
**Brant, Abraham, Reiter, McCormick & Greene, PA**
Counsel for Plaintiff
50 North Laura Street, Suite 2750
Jacksonville, FL 32202
Telephone:    904-358-2750
Facsimile:    904-353-1166
cjgreene@barmg.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 08–20014–CIV–UNGARO / O'SULLIVAN

AMERICAN RESIDENTIAL
EQUITIES, LLC,

      Plaintiff,

vs.

DEL MAR DATATRAC, INC. and
FISERV, INC.,

      Defendants.

_____/

### ORDER GRANTING DEFENDANTS, DEL MAR DATATRAC, INC. AND FISERV, INC.'S MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFF, AMERICAN RESIDENTIAL EQUITIES, LLC'S COMPLAINT

THIS CAUSE came before the Court on Defendants, Del Mar Datatrac, Inc.'s and Fiserv, Inc.'s, Motion for Enlargement of Time to Respond to Plaintiff, American Residential Equities, LLC'S Complaint, and the Court having reviewed the Motion and being otherwise fully advised in the premises, it is Ordered and Adjudged as follows:

Defendant's Motion is granted.  The Defendants shall serve their response to the Plaintiff's Complaint on or before February 15, 2008.

    DONE AND ORDERED in the Miami, Florida, on this _29_ day of _January_, 2008.

_Ursula Ungaro_
URSULA M. UNGARO
UNITIED STATES DISTRICT JUDGE

1

Copies to:

**Adam D. Palmer, Esquire**
**Schoeppl & Burke, P.A.**
Counsel for Defendants
4651 North Federal Highway
Boca Raton, FL 33431
Telephone:    561-394-5602
Facsimile:    561-394-3121
apalmer@schoepplburke.com

And

**Christopher J. Greene, Esquire**
**Brant, Abraham, Reiter, McCormick & Greene, PA**
Counsel for Plaintiff
50 North Laura Street, Suite 2750
Jacksonville, FL 32202
Telephone:    904-358-2750
Facsimile:    904-353-1166
cjgreene@barmg.com

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability
Company,

     Plaintiff,

v.

DEL MAR DATATRAC, INC.,
a California Corporation, and FISERV,
INC., a Wisconsin Corporation,

     Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS, DEL MAR DATATRAC, INC. AND FISERV, INC.'S MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFF, AMERICAN RESIDENTIAL EQUITIES, LLC'S COMPLAINT

Plaintiff, American Residential Equities, Inc. ("ARE"), by and through its undersigned

counsel, and pursuant to Rule 7.1, Local Rules of the United States District Court, Southern

District of Florida, hereby responds to Defendants, Del Mar Datatrac, Inc. and Fiserv, Inc.'s

Motion for Enlargement of Time to Respond to Plaintiff, American Residential Equities, LLC's

Complaint, and states as follows:

Although Plaintiff has no objection to the extension through February 15, 2008, Plaintiff

was never contacted by counsel for the Defendants with respect to a requested extension to

February 15, 2008. Rather, Plaintiff was contacted by counsel for Defendants and, in connection

with that contact, agreed to an extension of time up to and including February 11, 2008. Plaintiff

files this response for the purpose of clarification and ensuring that the record before this Court is

correct and accurate.

Respectfully submitted,

Brant, Abraham, Reiter, McCormick & Greene, P.A.

Christopher J. Greene
Florida Bar No. 516015
cjgreene@barmg.com
Gregory Williamson
Florida Bar No. 0092990
gawilliamson@barmg.com
50 North Laura Street, Suite 2750
Jacksonville, Florida 32202
Mail: P.O. Box 4548 (32201-4548)
Telephone: (904) 358-2750
Facsimile: (904) 353-1166
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via the CM/ECF System

and U.S. Mail to: Adam D. Palmer, PA, Schoeppl & Burke, PA, 4651 North Federal Highway, Boca

Raton, FL 33431, this 29th day of January, 2008.

Attorney

00042799.DOC/6256.1

- 2 -

Jan. 30. 2008 3:37PM    ....... ......... .......    No. 2619   P. 2

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| :<br>:<br>:<br>:<br>: | | |
| Telephone No: | | |
| Attorney for: **Plaintiff** | Ref. No. or File No.: | |
| Insert name of Court, and Judicial District and Branch Court: | | |

Plaintiff: **AMERICAN RESIDENTIAL EQUITES, LLC**
Defendant: **DEL MAR DATATRAC, INC.**

| **PROOF OF SERVICE**<br>**SUMMONS & COMPLAINT** | Hearing Date: | Time: | Dept/Div: | Case Number: |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

*2. I served copies of the SUMMONS & COMPLAINT*

*3. a. Party served:*         **DEL MAR DATATRAC, INC.**
    *b. Person served:*      **BECKY DE GEORGE, AUTHORIZED TO ACCEPT SERVICE;** White, Female,
                                  47 Years Old, Blond Hair, 5 Feet 7 Inches, 170 Pounds

*4. Address where the party was served:*      **CSC LAWYERS INCORPORATING SERVICE**
                                            **2730 GATEWAY OAKS DRIVE**
                                            **SUITE 100**
                                            **SACRAMENTO, CA 95833**

*5. I served the party:*
    *a.* **by personal service.** I personally delivered the documents listed in Item 2 to the party or person authorized to receive service of
       process for the party (1) on: **Tue., Jan. 08, 2008** (2) at: **1:05PM**

*6. The "Notice to the Person Served" (on the Summons) was completed as follows:*
    *on behalf of:* **DEL MAR DATATRAC, INC.**
    Under CCP 416.10 (corporation)

*7. Person Who Served Papers:*                             Recoverable Cost Per CCP 1033.5(a)(4)(B)
    *a.* TANYA THOMAS                  *d. The Fee for Service was:*
    *b.* **DEL VALLE'S PROCESS SERVING**        *e.* I am: (3) registered California process server
        **2200 BUSINESS WAY**                     *(i)* Employee
        **SUITE 207**                            *(ii)* Registration No.:     2005-26
        **RIVERSIDE, CA 92501**                *(iii)* County:            Sacramento
    *c.* 951-683-7881

*8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Tue., Jan. 08, 2008

| Judicial Council Form POS-010<br>Rule 2.150(a)&(b) Rev January 1, 2007 | **PROOF OF SERVICE**<br>**SUMMONS & COMPLAINT** | (TANYA THOMAS) | J&a 120503 |
|---|---|---|---|

AO 440 (Rev. 10/2002) Summons in a Civil Case

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: _____

AMERICAN RESIDENTIAL
EQUITIES, LLC

         Plaintiff

   v.

DEL MAR DATATRAC, INC. and
FISERV, INC.

         Defendant

*NGARO*

MAGISTRATE JUDGE
O'SULLIVAN

### SUMMONS IN A CIVIL CASE

TO: (Name and address of defendant)

DEL MAR DATATRAC, INC.
c/o CSC - Lawyers Incorporating Service
Registered Agent
2730 Gateway Oaks Drive, Suite 100
Sacramento, CA 95852
Telephone: (961) 841-5100

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher J. Greene, Esq.
Gregory Williamson, Esq.
BRANT, ABRAHAM, REITER, McCORMICK & GREENE, P.A.
50 N. Laura Street
Suite 2750
Jacksonville, FL 32202
Telephone: (904) 358-2750

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox
_____
CLERK OF COURT

*Martha D Pabon*
_____
(BY) DEPUTY CLERK

DATE   1/2/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability Company,

      Plaintiff,

v.

DEL MAR DATATRAC, INC.,
a California Corporation, and FISERV,
INC., a Wisconsin Corporation,

      Defendants.
_____/

## NOTICE OF COMPLIANCE

Plaintiff, in compliance with the Order Setting Initial Planning and Scheduling Conference, hereby gives notice of the service of the Order Setting Initial Planning and Scheduling Conference to the Defendant.

      Respectfully submitted,

      Brant, Abraham, Reiter, McCormick & Greene, P.A.

      Christopher J. Greene
      Florida Bar No. 516015
      cjgreene@barmg.com
      Gregory Williamson
      Florida Bar No. 0092990
      gawilliamson@barmg.com
      50 North Laura Street, Suite 2750
      Jacksonville, Florida 32202
      Telephone: (904) 358-2750
      Facsimile: (904) 353-1166
      Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via the CM/ECF System
and U.S. Mail to: Adam D. Palmer, PA, Schoeppl & Burke, PA, 4651 North Federal Highway, Boca
Raton, FL 33431, this /4ᵗʰ day of February, 2008.

Attorney

00043290.DOC/6256.1

- 2 -

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL
EQUITIES, LLC,

        Plaintiff,

vs.

DEL MAR DATATRAC, INC. and
FISERV, INC.,

        Defendants.

_____/

**DEFENDANTS, DEL MAR DATATRAC, INC.'S AND FISERV, INC.'S
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a), AND
ALTERNATIVE MOTION TO DISMISS PURSUANT TO RULE 12(b)(3),
FED.R.CIV.P., AND INCORPORATED MOTION FOR ENLARGEMENT
OF TIME AND SUPPORTING MEMORANDUM OF LAW**

Defendants, DEL MAR DATATRAC, INC. and FISERV, INC. (collectively,

"**Defendants**"), pursuant to 28 U.S.C. §1404(a) and Rule 12(b)(3), Fed.R.Civ.P., move

this Court for the entry of an Order enforcing the mandatory forum selection clause

contained in the agreement that is the subject of this litigation, and transferring venue of

this matter to a court in California, or, alternatively, dismissing this case due to improper

venue; and, Defendants further request an enlargement of time to respond to the

substantive allegations of the Complaint, including an enlargement of time to file any

prospective Rule 12(b)(6) Motion to Dismiss, until after this Court rules on the threshold

issues of venue and jurisdiction raised herein, and in support thereof Defendants state:

1.    On or about January 2, 2008, Plaintiff, AMERICAN RESIDENTIAL

EQUITIES, LLC ("**ARE**"), initiated this action against Defendants, invoking this Court's

diversity jurisdiction pursuant to 28 U.S.C. §1332(a).

2.    The Complaint asserts claims alleging Fraud in the Inducement (Count I),

Negligent Misrepresentation (Count II), Breach of Contract (Count III, incorrectly

numbered Count IV), and Violation of Florida's Deceptive and Unfair Trade Practices

Act (Count IV, incorrectly numbered Count V).

3.    Attached as Exhibit "A" to the Complaint is a contract entitled, *Sales*

*Agreement (Including Attached Addenda and Other Written Modifications)* (the **"Sales**

**Agreement"**).

4.    The Sales Agreement specifically states the following:

> **[ARE] agrees to review, sign and comply with the End
> User License Agreement which will be presented to
> Customer upon installation of the Licensed Program, a
> form of which is attached hereto as Addendum D.** This
> Sales Agreement may be executed in counterparts each of
> which shall be deemed an original and together shall
> constitute one instrument. **The Sales Agreement together
> with all Addenda A, B, C and D, constitute the entire
> agreement of the parties on the subject matter hereof**
> and supersedes all prior or contemporaneous written and
> verbal agreements.  The Sales Agreement may only be
> modified by a writing signed by [ARE] and Del Mar
> Database.

(Emphasis added).

5.    Addendum D to the Sales Agreement is the *End User License Agreement*

(the **"EULA"**).

6.    Paragraph 15 of the EULA contains a mandatory forum selection clause

which states, in pertinent part:

2

> This EULA shall, for all purposes be construed, governed by and enforced solely and exclusively in accordance with the laws of the State of California, USA, without giving effect to its conflict of law provisions or Client's actual state of residence. [ARE] hereby agrees that the **courts located in San Diego, California, USA, will constitute the sole and exclusive forum** for the resolution of **any and all disputes** arising out of or in connection with this EULA and [ARE] hereby **irrevocably consents to the personal jurisdiction and venue of such courts** and irrevocably waives any objections thereto. . . . This EULA together with the Sales Agreement incorporated by reference herein, constitutes the entire agreement between Client and DMD and supersedes any prior or contemporaneous written or oral agreement concerning the subject matter hereof.

(Emphasis added).

7.    Paragraph 15 of the EULA is a mandatory forum selection clause that limits jurisdiction and venue to courts located in San Diego, California, for the resolution of any dispute "arising out of or in connection with" the EULA. Significantly, the EULA incorporates by reference the Sales Agreement; and the Sales Agreement incorporates by reference the EULA.

8.    Accordingly, this Court must enforce the mandatory forum selection clause and transfer the venue of the instant litigation to a court in San Diego, California pursuant to 28 U.S.C. §1404(a).

9.    Alternatively, this Court should dismiss this case due to the fact that ARE has wrongfully attempted to disregard and circumvent the mandatory venue provision in the written agreements that govern the parties, and ARE has wrongfully filed this action in an improper venue. Rule 12(b)(3), Fed.R.Civ.P.

10.    Additionally, the instant Motion to Transfer is a threshold issue that should be resolved prior to Defendants being required to address the substantive

allegations related to the merits of ARE's claims, including the legal sufficiency of the allegations of the Complaint. Accordingly, this Court should grant Defendants an enlargement of time to otherwise respond to ARE's Complaint so that a court of proper venue can address the substantive issues in this litigation, including without limitation, ruling on any prospective Rule 12(b)(6), Fed.R.Civ.P. motions to dismiss.

11.     Such enlargement of time especially makes sense where the EULA states that it "shall, for all purposes, be construed, governed by and enforced solely and exclusively in accordance with the laws of the State of California."

WHEREFORE, Defendants, DEL MAR DATATRAC, INC. and FISERV, INC., respectfully request this Court to grant the following relief:

a. That this Court enforce the mandatory forum selection clause found in paragraph 15 of the EULA and transfer venue to a proper forum; and

b. Alternatively, that this Court dismiss this action due to improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P.; and

c. That this Court grant Defendants a reasonable enlargement of time after this Court enters an Order concerning Defendant's threshold challenge to venue to permit Defendants at least twenty days within which to respond to the substantive allegations of the Complaint and/or to file motions pursuant to Rule 12(b)(6) directed to the substantive allegations of the Complaint; and

d. That this Court grant such other and further relief as this Court deems just and proper.

## MEMORANDUM OF LAW

### I.    Factual Background

ARE's claims in the Complaint arise out of its decision to purchase a new software system from Defendants.[1]  In connection with its decision to purchase the new software system, ARE executed a Sales Agreement, including the EULA.[2]  A copy of the Sales Agreement, including the EULA and other Addenda, is attached to the Complaint as Exhibit "A."

According to the allegations of the Complaint, the software system did not perform as expected.[3]  As a result, ARE brought suit against Defendants in the District Court, Southern District of Florida.

For the reasons that follow, venue of this matter should be transferred to a court located in San Diego, California, in accordance with the mandatory forum selection clause contained in the EULA.

### II.    Argument

This Court should enter an order enforcing the mandatory forum selection clause in the EULA and transfer the venue of this matter to a court in San Diego, California.

---

[1] *See* ¶9 of Complaint.
[2] *See* ¶9 of Complaint.
[3] *See* ¶¶17 – 19 of Complaint.

**A. The factors to be considered by this Court do not outweigh the mandatory forum selection clause that requires all disputes to be resolved in California.**

At the outset, it is important to note that the provisions of 28 U.S.C. §1404(a), not state law, control the enforceability of choice of forum clauses in federal courts. *In re Ricoh Corp.,* 870 F.2d 570, 572 (11th Cir. 1989)(*citing, Stewart Org., Inc. v. Ricoh Corp.,* 108 S.Ct. 2239 (1988)). More particularly, 28 USC 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *D/H Oil and Gas Co. v. Commerce Indus. Ins. Co.,* 2005 WL 1153332 (N.D. Fla.)(*quoting, Ricoh,* 108 S.Ct. at 2244)). A valid forum selection clause is, however, "a significant factor that figures centrally in the district court's calculus." *Id.; see also, P & S Bus. Machines, Inc. v. Canon USA, Inc.,* 331 F.3d 804 (11th Cir. 2003). Moreover, the venue mandated by a choice of forum clause will rarely be outweighed by consideration of the convenience of the parties and the interest of justice. *Hospitality Design Consultants, Inc. v. Ventura Beach Ventures, LLC,* 2007 WL 2412843 (S.D. Fla.). In quoting from Justice Kennedy's concurring opinion in *Ricoh*, this Court noted: "[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id. (quoting, Ricoh,* 108 S.Ct. at 2245 (Kennedy, J., concurring)). Accordingly, "a valid forum selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 2246.

6

Other factors the Court should consider are the following: (1) whether the contract was "freely and fairly negotiated by experienced business professionals"; (2) whether "fraud, duress, misrepresentation or other misconduct" was alleged with respect to the forum selection clause;[4] and (3) whether any "intervening and unexpected occurrences between the contract's formation and the filing of the suit" would frustrate the purpose of the forum selection clause. *Murray v. Quiznos Franchising LLC*, 2006 WL 1529540 (M.D. Fla.)(*quoting, Ricoh*, 870 F.2d at 574.

Usually, the party moving for a change of venue pursuant to 28 U.S.C. §1404(a) bears the burden to establish that the suggested forum is more convenient than the plaintiff's choice of forum. *Ricoh*, 870 F.2d at 573. However, when the parties have entered into a valid, reasonable choice of forum provision, the opponent to a motion to transfer bears the burden of persuading the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute. *Id.; see also, Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*, 510 F.Supp.2d 1075, 1077 (S.D. Fla. 2007).

In *Hospitality Design Consultants*, 2007 WL 2412843 (S.D. Fla.), a written agreement between the parties contained a forum selection clause that vested "exclusive jurisdiction" of any disputes concerning the subject agreement in Broward County, Florida. Defendant moved to transfer venue to a district in California for the following reasons: (1) because defendant was a California limited liability company that conducts business and holds assets solely in California; (2) the work that was the subject of the agreement was performed in California, under permits issued by a California

---

[4] The fraud allegations must be alleged with respect to inducing a party to agree to the inclusion of the forum selection clause in the contract, not a general claim of fraud directed toward the entire contract. *Murray v. Quiznos Franchising LLC*, 2006 WL 1529540, n.3 (M.D. Fla.)(citation omitted).

municipality and subject to California construction standards and local building codes;

and (3) virtually all witnesses were located in California. *Id.* This Court held:

> Even without questioning the truth of these assertions, they do not warrant setting aside Defendant's freely negotiated agreement that, "in the event of any dispute ... concerning [the Agreement], exclusive jurisdiction over that dispute shall be adjudicated in Broward County, Florida." . . . None of the circumstances asserted by Defendant is unusual, much less extraordinary, in the context of an agreement between two commercial entities located in different states. When they entered into their Agreement, the parties had all of these matters within their contemplation. . . . To allow transfer of this case away from the agreed upon forum would not only harm Plaintiff by compelling it to take on a risk it had specifically bargained to avoid, it would unjustly benefit Defendant by excusing it of a risk that was squarely within its contemplation at the time the Agreement was made. . . . Furthermore, insofar as the convenience of the parties is concerned, the fact that Defendant is a California company, which would be inconvenienced by having to litigate in Florida, is entirely offset by the fact that Plaintiff is a Florida company which would be equally inconvenienced by having to litigate in California.

*Id.* (footnote and citations omitted).

In *Exprezit Convenience Stores, LLC v. Transaction Tracking Technologies, Inc.,* 2005 WL 2704891 (N.D. Fla.), the parties' agreement contained a forum selection clause that is quite similar to the one in the instant case. In *Exprezit*, the forum selection clause in the parties' agreement provided the following:

> This Agreement will be governed by and construed under the laws of the State of Tennessee without reference to conflict of laws principles. For any disputes arising out of this Agreement, the parties irrevocably consent to the personal and exclusive jurisdiction of, and venue in, the state or federal courts with[in] Davidson County, Tennessee.

8

In agreeing to transfer the case, the Court in the Northern District of Florida noted that it was clear from the agreement that any disputes arising out of the agreement were to be brought in Tennessee. *Id.* It also noted that the plaintiffs did not allege or prove that the agreement was not freely and fairly negotiated by experienced business professionals. Nor did plaintiffs allege that the defendant engaged in fraud, duress, misrepresentation, or other misconduct in negotiating the forum selection clause. Nor did they attempt to demonstrate that Tennessee would be any more inconvenient for the parties and witnesses than a forum in Florida would be. *Id.*

Similarly, in the instant case, the parties, located in different states, entered into a commercial Sales Agreement and EULA containing a valid, reasonable forum selection clause. There are no allegations, much less evidence, of fraud in connection with the negotiation of the forum selection clause. Nor has there been any intervening or unexpected occurrence between the time the Sales Agreement and EULA were entered into and the filing of the instant lawsuit that could arguably frustrate the purpose of the forum selection clause. Furthermore, there is no reason why the Defendants should be more inconvenienced than ARE by having to litigate in Florida, when the freely negotiated and bargained for forum selection clause in the parties' EULA and Sales Agreement specifically directs litigation to take place in California. Accordingly, this Court should enforce the mandatory forum selection clause and transfer the entire case to a court in San Diego, California.

9

**B. The forum selection clause is a mandatory clause that requires "any and all" litigation "arising out of or in connection with" the Sales Agreement to take place in California.**

ARE may argue that the forum selection clause in the parties' EULA is merely a "permissive" clause, rather than mandatory, and it should not, therefore, be foreclosed from bringing its lawsuit in Florida. This argument is not supported by applicable law.

A permissive forum selection clause "authorizes jurisdiction in a designated forum, but does not prohibit litigation elsewhere." *Coffee Holding, Inc.,* 510 F.Supp.2d at 1077 (*quoting, Global Satellite Communication Co. v. Starmill U.K. Ltd.,* 378 F.3d 1269, 1272 (11th Cir. 2004)(*quoting, Snapper, Inc. v. Redan,* 171 F.3d 1249, 1261 (11th Cir. 1999)). By contrast, a mandatory venue clause "dictates an exclusive forum for litigation under the contract." *Id.* A mandatory clause must be clear, unequivocal and contain language of exclusivity. *Taylor, Bean & Whitaker Mtg. Corp. v. GMAC Mtg. Corp.,* 2006 WL 4990903 (M.D. Fla.). When venue is *mandated* by a forum selection clause it will rarely be outweighed by other §1404(a) factors. *Id.*

In *Coffee Holding, Inc.,* 510 F.Supp.2d at 1075, the forum selection clause at issue in that case provided the following:

> This Agreement shall be governed by and construed in accordance with the law of the State of Delaware, without regard to the conflicts of laws principles thereof. To the fullest extent permitted by law, the parties hereto hereby (i) submit to the jurisdiction of the state and federal courts located in the State of Delaware for purposes of any legal action or proceeding brought under or in connection with this Agreement, (ii) agree that exclusive venue of any such action or proceeding may be laid in the State of Delaware and (iii) waive any claim that the same is an inconvenient forum.

*Id.* at 1077. In *Coffee* a Southern District of Florida decision, the Court found the venue

clause to be mandatory, despite the use of the words "may be laid in the State of

Delaware." As noted by the Court, the words "may be" must be read in the context of the

rest of the provision which clearly stated that the parties were submitting to the courts in

Delaware for *"any legal action or proceeding brought under or in connection with this*

*Agreement"* and that *"exclusive venue"* of such actions "may be laid in the State of

Delaware. *Id.* The foregoing language made it clear that Delaware was the exclusive

venue for actions arising in connection with the agreement that was the subject of that

action. *Id.*

   In the instant case, the forum selection clause in the EULA contains even stronger

language of exclusivity:

> This EULA shall, **for all purposes be construed,**
> **governed by and enforced solely and exclusively in**
> **accordance with the laws of the State of California,**
> USA, without giving effect to its conflict of law provisions
> or [ARE's] actual state of residence. [ARE] hereby agrees
> that **the courts located in San Diego, California, USA,**
> **will constitute the sole and exclusive forum** for the
> resolution of any and all disputes arising out of or in
> connection with this EULA and [ARE] hereby irrevocably
> **consents to the personal jurisdiction and venue of such**
> **courts and irrevocably waives any objections thereto**.

(Emphasis added).

   Thus, there is a mandatory forum selection clause requiring both jurisdiction and

venue to be with the courts in San Diego, California, the "sole and exclusive" forum for

resolving "any and all disputes" between the parties. Moreover, ARE "irrevocably"

consented to the personal jurisdiction *and* venue in California, and "irrevocably waive[d]

any objections thereto." One would be hard pressed to find language more clear than

this. Accordingly, this Court should enforce the same and grant Defendants' Motion to Transfer.

**C. The forum selection clause in the parties' EULA applies to both the contract and tort claims raised by ARE and the entire case should be transferred to California.**

This Court should transfer ARE's entire case to a court in San Diego, California. The 11th Circuit has set forth two reasons to broadly construe forum selection clauses: (1) to effectuate an orderly and efficient resolution of *all* claims arising between the parties to a contract; and (2) to promote enforcement of forum selection clauses consistent with the parties' intent. *Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099 (M.D. Fla.)(*citing, Ricoh*, 810 F.2d at 1070)). Thus, clauses that reference "any lawsuit regarding this agreement" and "any action brought by either party in any court" are broadly construed to include contract claims that arise directly or indirectly from the contractual relationship, as well as tort and extra-contractual claims. *Id.*

In the *Pods* case, the Court held that the reference to "any lawsuit" in the forum selection clause was sufficiently broad to require a transfer of venue, for plaintiff's contract claims *and* for plaintiff's tort and extra-contractual claims, including claims for deceptive and unfair trade practices, negligent misrepresentation, false information negligently supplied for the guidance of others, and common law indemnity. *Id.* at 2.

Similarly, in *Exprezit*, 2005 WL 2704891 (N.D. Fla.), a case with a forum selection clause very similar to the instant case, the Court in the Northern District of Florida transferred the contract claims and the extra-contractual claims. The *Exprezit* court held that the venue provision in the contract applied not only to the claims for

breach of contract and restitution, but also to the claims for violation of Florida's

Deceptive and Unfair Trade Practices Act and for conversion. As the court noted: "If

forum selection clauses are to be enforced as a matter of public policy, that same public

policy requires that they not be defeated by artful pleading of claims." *Pods,* 2006 WL

1382099 (M.D. Fla.), n.2 (*quoting, Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*

709 F.2d 190, 203 (3d Cir. 1983), *overruled on other grounds, cert. denied,* 104 S.Ct.

349 (1983)).

As in the *Exprezit* and *Pods* cases, the forum selection clause at issue in this

litigation is broad enough to encompass not only ARE's breach of contract claim, but

also its extra-contractual claims for fraud in the inducement, negligent misrepresentation,

and for deceptive and unfair trade practices, all of which arise, directly or indirectly, in

connection with the EULA and the Sales Agreement. The instant forum selection clause

specifically applies to the resolution of "any and all disputes arising out of or in

connection with this EULA." All of ARE's claims involve the same set of operative facts

and arise out of, or in connection with, the parties' Sales Agreement and/or EULA.

Accordingly, this entire case should be transferred to California.


**D. The mandatory forum selection clause found in the EULA is incorporated by reference in the Sales Agreement, and must be enforced by this Court.**

ARE may try to argue that the EULA is a separate document from the Sales

Agreement and that, therefore, the forum selection clause contained in the EULA is not

applicable to the claims raised in this case. This Court should not be persuaded by this

argument as it is simply incorrect. The EULA is specifically incorporated into the Sales

13

Agreement and together with the other Addenda serve as one complete agreement between the parties.

First, the Sales Agreement incorporates the Addenda, including Addendum D (which is the EULA) by referencing the Addenda in its title and by attaching it as an exhibit. In addition, at the end of the Sales Agreement, just above the parties' signatures, it specifically references the EULA (Addendum D) and the other attachments:

> [ARE] agrees to review, sign and comply with the End User License Agreement which will be presented to [ARE] upon installation of the Licensed Program, a form of which is attached hereto as Addendum D. . . .**The Sales Agreement together with all Addenda A, B, C and D, constitute the entire agreement of the parties on the subject matter hereof.**

(Emphasis added).

Finally, the EULA specifically states in paragraph 15:

> This EULA, together with the Sales Agreement incorporated by reference herein, constitutes the entire agreement between Client and DMD.

In *Salco Distributors, LLC v. Icode, Inc.,* 2006 WL 449156 (M.D. Fla.), a case very similar to the instant litigation, the plaintiff purchased software from the defendant pursuant to certain purchase orders. The purchase orders contained language that the document was "bound by and subject to the conditions of the Software's End User License and Service Agreements [the "License Agreement"]; [and that by] signing below, you are agreeing to be bound by these terms and conditions of the sale." *Id.* A hard copy of the License Agreement was shipped with the software and was displayed on the computer screen when plaintiff installed it. The License Agreement also contained a forum selection clause that established exclusive venue for any litigation in Virginia. *Id.*

14

Ultimately, plaintiff brought suit against the defendant in the Middle District of Florida for breach of contract and negligent misrepresentation. The plaintiff tried to argue against enforcement of the forum selection clause as a term that was not agreed to by the parties. The Court disagreed, noting that a document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms. *Id.*

In the instant case, both the Sales Agreement and the EULA reference each other, with the EULA specifically incorporating by reference the terms of the Sales Agreement. As evidenced by the execution dates found on both documents, the Sales Agreement and EULA were executed simultaneously and ARE specifically agreed to be bound by the terms of both documents. In fact, ARE attached the Sales Agreement, including the EULA, as Exhibit "A" to its Complaint and refers to these documents and the Addenda collectively as the "Sales Agreement" throughout its pleading, thereby expressly admitting that it is bound by these documents. Therefore, any attempt by ARE to try to argue that the forum selection clause is inapplicable to the facts of this case is not supported by the facts in this case or the law. Accordingly, the forum selection clause in the EULA is applicable to the incorporated Sales Agreement and that the parties are bound thereby.

**E. In the alternative to transferring venue, this Court should dismiss this case pursuant to Rule 12(b)(3), Fla.R.Civ.P.**

While there is abundant authority for this Court to transfer this case to California pursuant to 28 U.S.C. §1404(a), there is also a line of cases that authorizes dismissal for improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P. *See, e.g., Lipcon v.*

*Underwriters at Lloyd's London,* 148 F.3d 1285 (11th Cir 1998); *BP Products North*

*Amer., Inc. v. Super Stop 79, Inc.,* 464 F.Supp.2d 1253 (S.D. Fla. 2006); and *Land-*

*Cellular Corp. v. Zokaites,* 2006 WL 3039964 (S.D. Fla.).[5]

When seeking to dismiss a case for improper venue under Rule 12(b)(3), the

analysis undertaken by the court is similar to that undertaken pursuant to 28 U.S.C.

§1404(a).  First, on a motion to dismiss based on improper venue, the plaintiff has the

burden to prove that venue in its chosen forum is proper.  *BP Products North Amer., Inc.*

*v. Super Stop 79, Inc.,* 464 F.Supp.2d 1253, 1256 (S.D. Fla. 2006).  Second, the central

question that must be addressed is whether the subject forum selection clause is

mandatory or permissive.  *Land-Cellular Corp. v. Zokaites,* 2006 WL 3039964 (S.D.

Fla.).  The forum selection clause at issue in the instant case is mandatory because it

unambiguously confers jurisdiction exclusively in the courts located in San Diego,

California.  Accordingly, a dismissal pursuant to Rule 12(b)(3) would be appropriate.

### F.  This Court should grant Defendants an enlargement of time to respond to the substantive allegations of the Complaint until after this Court's addresses the threshold issue of venue contained in the instant Motion.

This Court should grant Defendants an enlargement of time to respond to the

Complaint, until after this Court addresses the threshold issue of venue contained in the

---

[5] Admittedly, the Northern District of Florida has disagreed with a line of cases that allows a dismissal pursuant to Rule 12(b)(3) based on an application of a forum selection clause.  The Northern District has concluded that a Rule 12(b)(3) dismissal is only appropriate when a choice of forum clause places venue in a foreign country.  Where a forum selection clause designates a domestic forum, however, the proper procedure to enforce the clause is a motion to transfer pursuant to 28 USC §1404(a).  See, e.g., Exprezit, 2005 WL 2704891 (N.D. Fla.) and D/H Oil and Gas, 2005 WL 1153332 (N.D. Fla.).

instant Motion.[6]  Specifically, the issue of venue is a threshold issue that must be determined before any substantive motions are filed and ruled upon.  *Home Insurance Co. v. Thomas Industries, Inc.,* 896 F.2d 1352, 1357 (11th Cir 1990)(the court stated that "on a threshold motion involving venue, this court cannot, and indeed should not, make a determination regarding the merits that must be reserved for the factfinder").  If this case is ultimately transferred to California, then the California Court should be the court to rule on issues that go to the merits of the case.  This is especially true in the instant case because the EULA contains a choice of law provision that requires the Sales Agreement and EULA to be "construed, governed by and enforced solely and exclusively in accordance with the laws of the State of California."

Furthermore, having this Court address the threshold issues first, before requiring Defendants to address the merits of ARE's claims, will preclude the necessity to re-argue the same points before the appropriate forum in California and thereby reduce Defendants' exposure to attorneys' fees, facilitating judicial economy.

Accordingly, this Court should grant Defendants a reasonable enlargement of time to respond to the substantive allegations of the Complaint until at least twenty days after this Court's addresses the threshold issues of jurisdiction and venue contained in the instant Motion, including an enlargement of time to file any prospective Rule 12(b)(6) motions for failure to state a claim upon which relief may be granted.

---

[6] In addition, it should be noted that pursuant to the express terms of the EULA, the Plaintiff, ARE, has irrevocably consented to the jurisdiction of the court in San Diego, California.  See EULA at Paragraph 15.

### III.    Conclusion

For the foregoing reasons, this Court should enter an Order that transfers venue of this case to California pursuant to 28 USC §1404(a) or, in the alternative, this Court should dismiss this case due to improper venue pursuant to Rule 12(b)(3), Fed.R.Civ.P. Additionally, this Court should enter an Order providing Defendants with an enlargement of time to respond to the substantive allegations of the Complaint until after this Court addresses the threshold issues of jurisdiction and venue contained in the instant Motion, together with such other and further relief as this Court deems appropriate under the circumstances.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of February, 2008, I electronically filed the foregoing *Motion to Transfer Venue, Etc.* with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record: **Christopher J. Greene, Esquire**, Brant, Abraham, Reiter, McCormick & Greene, PA, 50 North Laura Street, Suite 2750, Jacksonville, FL 32202.

**SCHOEPPL & BURKE, PA**
Counsel for Defendants
4651 North Federal Highway
Boca Raton, FL 33431
Telephone:    561-394-5602
Facsimile:    561-394-3121
apalmer@schoepplburke.com


By: _s/ Adam D. Palmer,_____
    **Adam D. Palmer, PA**
    Florida Bar No. 735220

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability
Company,

       Plaintiff,

v.

DEL MAR DATATRAC, INC.,
a California Corporation, and FISERV,
INC., a Wisconsin Corporation,

       Defendants.

_____/

## UNOPPOSED MOTION FOR ENLARGEMENT OF TIME
## AND INCORPORATED MEMORANDUM OF LAW

      Pursuant to Rule 6(b), Federal Rules of Civil Procedure, Plaintiff, American Residential

Equities, LLC ("ARE"), moves for the entry of an Order enlarging the time within which it must

respond to Defendants, Del Mar Data Trac, Inc.'s and Fiserv, Inc.'s Motion to Transfer Venue

Pursuant to 28 U.S.C. §1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3),

Fed.R.Civ.P. and Incorporated Motion for Enlargement of Time and Supporting Memorandum

of Law (the "Motion") by ten (10) days, up through and including March 17, 2008. As grounds

in support, BSF states as follows:

      1.      On or about February 15, 2008, the Defendants filed the Motion requesting,

among other things, that this case be transferred to the Southern District of California or

dismissed. Defendants served the Motion electronically using the CM/ECF system, and pursuant

to applicable rules of procedure, ARE's response is due before close of business on March 6, 2008.[1]

2.    Given preexisting obligations, counsel for ARE is in need of additional time to prepare a response to Defendants' Motion. As a result, ARE requests a ten (10) day enlargement of time, and proposes to respond to the Motion no later than Monday, March 17, 2008.[2]

3.    Defendants' counsel has authorized the undersigned to represent that Defendants have no objection to the relief requested herein.

4.    This Motion is not brought for the purpose of delay.

WHEREFORE, the Plaintiff, American Residential Equities, Inc., respectfully requests that the Court enlarge the time within it must respond to Defendants, Del Mar Data Trac, Inc.'s and Fiserv, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3), Fed.R.Civ.P. and Incorporated Motion for Enlargement of Time and Supporting Memorandum of Law by ten (10) days, up through and including March 17, 2008, along with such further relief as the Court deems proper and just.

## MEMORANDUM OF LAW

Rule 6(b), Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . .

Fed.R.Civ.P. 6(b). The Rule provides the Court with wide discretion to grant a request for additional time. In this case, the Defendants have no objection to the relief ARE requests, and

---

[1]    Local Rule 7.1.C.1(a).

[2]    Counsel for Defendants agreed to a ten (10) day enlargement of time. The tenth day, however, falls on a Sunday, and ARE proposes to file its response on the next business day.

will suffer no prejudice if ARE is given additional time to respond to the Motion.  Moreover,

ARE is not making this request for the purpose of delay, and instead has a good faith need for an

enlargement of time.  As a consequence, ARE respectfully requests entry of an Order granting

this Motion, providing ARE with a ten (10) day enlargement of time within which to respond to

Defendants' Motion, and providing such further relief as the Court deems proper and just.

## RULE 7.1.A.3. CERTIFICATION

Pursuant to Local Rule 7.1.A.3, the undersigned certifies that he has discussed the issues

raised herein with counsel for Defendants, who have authorized the undersigned to represent that

Defendants have no objection to the relief requested herein.

Respectfully submitted,

Brant, Abraham, Reiter, McCormick & Greene, P.A.

/s/ Gregory Williamson
Christopher J. Greene
Florida Bar No.: 516015
E-Mail: cjgreene@barmg.com
Gregory Williamson
Florida Bar No.: 0092990
E-Mail: gawilliamson@barmg.com
50 North Laura Street, Suite 2750
Jacksonville, Florida 32202
Telephone: (904) 358-2750
Facsimile: (904) 353-1166
Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via the CM/ECF System

and U.S. Mail to: Adam D. Palmer, PA, Schoeppl & Burke, PA, 4651 North Federal Highway, Boca

Raton, FL  33431, this 3rd day of March, 2008.


/s/ Gregory Williamson
Gregory Williamson
E-Mail: gawilliamson@barmg.com


00043856.DOC

- 4 -

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability Company,
    Plaintiff,

v.

DEL MAR DATATRAC, INC., a California
Corporation, and FISERV INC., a Wisconsin
Corporation,,
    Defendants.

_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE A RESPONSE TO DEFENDANTS' MOTION

THIS CAUSE is before the Court upon Plaintiff's Unopposed Motion for Enlargement of

Time to File a Response to Defendants' Motion, filed March 3, 2008. (D.E. 15.)

THE COURT has considered the motion, the pertinent portions of the record and being

otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the Motion is GRANTED IN PART.  Plaintiff shall

file a response to Defendants' Motion no later **March 10, 2008**.  No further extensions will be

granted.

DONE AND ORDERED in Chambers at Miami, Florida, this 3d day of March, 2008.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability Company,
        Plaintiff,

v.

DEL MAR DATATRAC, INC., a California
Corporation, and FISERV INC., a Wisconsin
Corporation,,
        Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR EXTENSION OF TIME
## TO FILE A RESPONSE TO DEFENDANTS' MOTION

THIS CAUSE is before the Court upon Plaintiff's Unopposed Motion for Enlargement of

Time to File a Response to Defendants' Motion, filed March 3, 2008. (D.E. 15.)

THE COURT has considered the motion, the pertinent portions of the record and being

otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the Motion is GRANTED IN PART. Plaintiff shall

file a response to Defendants' Motion no later **March 10, 2008**. No further extensions will be

granted.

DONE AND ORDERED in Chambers at Miami, Florida, this 3d day of March, 2008.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES,
LLC, a Delaware Limited Liability
Company,

        Plaintiff,

v.

DEL MAR DATATRAC, INC.,
a California Corporation, and FISERV,
INC., a Wisconsin Corporation,

        Defendants.

_____/

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO TRANSFER OR DISMISS

Plaintiff, American Residential Equities, Inc. ("ARE"), responds to Defendants, Del Mar Data Trac, Inc.'s and Fiserv, Inc.'s Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3), Fed.R.Civ.P. and Incorporated Motion for Enlargement of Time and Supporting Memorandum of Law (the "Motion") as follows:

### I.    INTRODUCTION AND FACTUAL BACKGROUND

ARE is an investment company that specializes in acquiring, managing and liquidating undervalued first mortgage loans. Along those lines, ARE purchases discounted debt instruments (mortgages or deeds of trust) from companies in the business of originating such loans. Once the discounted loans are acquired, ARE outsources the primary servicing to multi-billion dollar national servicers, such as General Motors Acceptance Corporation ("GMAC"), who actually perform the work associated with servicing the loans. Overseeing and working in

conjunction with these servicing companies, ARE provides all, or a portion, of the following services each time a portfolio of loans is acquired:

- Due Diligence/Portfolio Evaluations;

- Default Management and Loss Mitigation;

- Loan Servicing;

- Asset Evaluation;

- Loan Administration;

- Property Management;

- Closing Services; and

- Cash Management.

In July or August of 2006, ARE decided that it would purchase a new software system that would allow it to perform these services more efficiently. Since many of the loans in these portfolios would ultimately be transitioned to GMAC, it was critically important that the product ultimately purchased integrate seamlessly with GMAC's servicing software systems. On or about September 11, 2006, Del Mar DataTrac, Inc. ("Del Mar"), acting as an agent of Fiserv, Inc. ("Fiserv"), made a proposal to ARE. During the proposal, Del Mar represented that it had the capability to offer a custom solution to facilitate ARE's mortgage operations using Del Mar's DataTrac software system as a base product.

According to Del Mar, the customized version of the DataTrac software system would allow ARE to gain control over its loan portfolios by centralizing data relating to underwriting, secondary marketing, documentation, funding, shipping, accounting and interim servicing and insuring. On a similar note, Del Mar promised that its solution was fast, easy and affordable. Del Mar promised that its software solution could be implemented without operational downtime

and that its suite of products was user-friendly, and little training would be required.  More importantly, Del Mar represented that it could create an interface that would enable weekly boarding of ARE servicing information stored on the DataTrac software system to GMAC and daily updates of servicing information from GMAC to ARE into the DataTrac Software System.

Del Mar's representations were all integral to its proposal, and constituted material inducements for ARE to accept the proposal over those of other potential vendors.  Indeed, ARE only agreed to Del Mar's proposal because of the promised functionality and its assertion that the Del Mar software solution would provide ARE with an almost immediate return on investment ("ROI").  Based on Del Mar's representations as described above, ARE entered into a form Sales Agreement with Del Mar.  Almost immediately after entering into the form Agreement, it became apparent that Del Mar's representations concerning its own capabilities, the capabilities of its software system, and the ROI that ARE could expect from implementing Del Mar's software system were false.

For example, despite the fact that Del Mar represented that it could create an interface that would enable weekly boarding of ARE servicing information stored on the DataTrac software system to GMAC and daily updates of servicing information from GMAC to ARE into the DataTrac Software System, after nearly a year into the implementation process, ARE still lacked the ability to download data from GMAC.  On a similar note, despite the fact that Del Mar asserted it would create a custom developed solution to communicate with GMAC, this never happened.  Instead of building a custom solution, Del Mar simply tried repeatedly to use a previously designed or other made to order system that was not suitable to ARE.   Furthermore, when confronted with the fact that its non-custom, previously designed system would not work, Del Mar did not provide the custom development solution promised, and instead billed ARE for

- 3 -

numerous custom reports that were not part of the agreement between the parties. Moreover, although Del Mar promised that its suite of products was user-friendly, and that little training would be required, ARE required literally weeks of training in order to use what proved to be an extremely cumbersome, illogical interface with its information using the Del Mar software system.

ARE's operations and database reporting requirements are typical of mortgage investors such as ARE, and are not unique. Based on the representations that Del Mar made to induce ARE to enter into an agreement, Del Mar' software system should have been an easy fit with ARE. Unfortunately, however, those representations were false when made. In any event, despite the significant shortcomings in the software system platform that Del Mar ultimately delivered, ARE made numerous attempts to work with Del Mar to resolve the problems with the software product. Regrettably, Del Mar ignored each of these efforts. Instead of collaborating with ARE to reach a mutually agreeable resolution, Del Mar and its principal, Fiserv, dunned ARE for the worthless software system platform.

Once it became clear that the Defendants would never deliver on their promises, ARE filed a four count complaint in this Court alleging claims for fraud in the inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count III) and violation of Florida's Deceptive and Unfair Trade Practices Act (Count IV).[1] The Defendants have now filed their Motion, requesting that the case be transferred to the Southern District of California pursuant to 28 U.S.C. §1404(a) or dismissed pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure. There are however, significant public policy reasons for keeping the case in Florida. And even if the public policy considerations do not provide sufficient bases for this Court to retain

---

[1]    Because of a scrivener's error, Counts III and IV are mislabeled as Counts IV and V, respectively.

- 4 -

jurisdiction, Rule 12(b)(3) does not provide an appropriate vehicle for dismissal. As a result, the Defendants' Motion is properly denied.

## II.    LEGAL ARGUMENT

### A.    The Forum Selection Clause in the EULA is Not Enforceable as to the Claim ARE has Asserted under Florida's Deceptive and Unfair Trade Practices Act.

In this case, ARE has alleged that the Defendants engaged in a deceptive and unfair trade practice by, among other things, making intentional misrepresentations designed to induce ARE to execute a form contract. ARE acknowledges that the form Sales Agreement includes a non-negotiated forum selection clause purporting to call for jurisdiction in California. Actually, the forum selection clause does *not* appear within the text of the Sales Agreement, but is instead found on the fourth page of the End User License Agreement ("EULA") attached as Exhibit "D" to the Sales Agreement.[2] Even then, the forum selection clause is not labeled as such, and instead appears in a paragraph captioned "General." In any event, the forum selection clause is unenforceable because ARE has alleged a claim under the Florida Deceptive and Unfair Trade Practices Act. Fla. Stat. §501.201, *et seq.* ("FDUTPA"). *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So.2d 627 (Fla. 1st DCA 1999).

The U.S. Supreme Court has held that where a court sits in diversity, as is true in this case, a forum selection clause is not neither dispositive nor irrelevant, but rather one of several factors that a court must consider in deciding a motion to transfer venue under 28 U.S.C. §1404(a). *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988). Under prevailing Eleventh Circuit case law, this Court may invalidate a forum selection clause in cases where "enforcement of the provision would contravene a strong public policy." *Lipcon v. Lloyd's of London*, 148

---

[2]    *See* Complaint, Exhibit A.

- 5 -

F.3d 1285, 1292 (11th Cir. 1998). The Florida Legislature enacted FDUTPA to further the policy

of protecting "the consuming public and legitimate business enterprises from those who engage

in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the

conduct of any trade or commerce." §501.202(2), Fla.Stat. (2007). And Florida courts have held

that enforcing a forum selection clause that would deprive a Florida court of hearing a FDUTPA

claim would violate Florida public policy because it would undermine the effectiveness of the

statute. *Management Computer,* 743 So.2d at 632.

In *Management Computer,* the plaintiff brought claims against the defendant for breach

of contract, breach of warranty, negligent misrepresentation and violation of FDUTPA. The

contract at issue provided that "the agreement" was to be interpreted and construed according to

the laws of Tennessee, and also provided that any action arising out of "the agreement" had to be

prosecuted in Tennessee. Florida's First District Court of Appeal held that a claim under

FDUTPA was controlled by Florida law, and not by the choice-of-law and forum selection

provisions of the agreement. The court held that those contractual provisions applied to the

plaintiff's common law claims because "those claims arose out of the contract." *Id.* at 632.

Citing important public policy concerns, however, the court held that the FDUTPA claim had to

be litigated in Florida:

> The unfair trade claim is an independent statutory claim that is severable from all
> the remaining claims. It does not arise out of the contract, nor does it exist solely
> for the benefit of the parties to the contract. Our conclusion is that the unfair
> trade practices claim is beyond the scope of venue clause is supported by the
> analogous decision of the Third District Court of Appeal in *First Pacific Corp. v.
> Sociedade de Empreendimentos e Construcoes, Ltda.,* 566 So.2d 3 (Fla. 3d DCA
> 1990). There, the court held that an action based on violations of the RICO
> statute the Florida Civil Remedies for Criminal Practices Act, and the Florida
> Communications Fraud Act was not subject to a contract clause establishing
> venue in a foreign jurisdiction. The court reasoned that enforcement of the venue
> clause would undermine the purposes of these statutes. Although the Unfair and
> Deceptive Trade Practices Act seeks to protect Florida citizens from a different

- 6 -

kind of evil, the point relating to the applicability of the forum selection clause is the same. The use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute.

*Id.*

In a claim under FDUTPA, the plaintiff is essentially taking private action to enforce public rights. The Second Circuit addressed such a situation in *Red Bull Associates v. Best Western International, Inc.*, 862 F.2d 963 (2d Cir. 1988). That case involved a licensing agreement that was terminated, according to the plaintiff, in violation of federal civil rights laws. The plaintiff brought suit against the defendant in the Southern District of New York, and the defendant moved to dismiss citing a mandatory forum selection clause in the licensing agreement calling for disputes between the parties to be resolved in Arizona. The Second Circuit refused to enforce the forum selection clause, holding that federal civil rights statutes evidence a strong public policy of encouraging enforcement of civil rights laws, and that transfer of the case from New York to Arizona might make the plaintiff unable or unwilling to pursue the claim. *Id.* at 967.

Likewise, in enacting FDUTPA, the Florida Legislature evidenced a strong public policy in favor of encouraging Florida consumers to take action to prevent deceptive, unfair or unconscionable business practices. Based on this public policy consideration, this Court should decline to enforce the forum-selection clause as it relates to ARE's FDUTPA claim, and enter an order denying Defendants' Motion.[3]

---

[3]     ARE acknowledges that, although it makes little sense to split claims between two federal district courts, under both *Management Computer* and prevailing federal case law, it would appear that Counts I-III are properly transferred to the Southern District of California pursuant to the non-negotiated forum selection clause in Del Mar's form EULA.

**B.**    **If the Court Determines that the Forum-Selection Clause is Enforceable, the Case is Properly Transferred, not Dismissed.**

The Defendants have also requested that the case be dismissed pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure (providing that a defense of improper venue may be brought by motion).   The Defendants cite to *Lipcon v. Lloyd's of London* for the proposition that Rule 12(b)(3) is the proper vehicle for disposing of cases where venue is lacking due to the application of a forum selection clause. *Lipcon*, 148 F.3d at 1285.   It is true that the *Lipcon* held that "motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue." *Id.*   But that case concerned an international agreement in which England was chosen as the sole forum for resolving disputes. *Id.*   Thus, while the court noted that 28 U.S.C. §1404(a) controls the request of a party to give effect to a contractual forum selection clause by transferring the action, the court found that the statute did not apply because the forum selection clause required litigation in another country. *Id.*

In cases since *Lipcon*, courts within the Eleventh Circuit have generally assumed that its rule only applies where transfer is impossible because the forum selection clause requires litigation in a foreign country. *See e.g., Hollis v. Florida State Univ.*, 259 F.3d 1295, 1300 n.5 (11th Cir. 2001)(indicating that *Lipcon* held "motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses [that purportedly require litigation in another country] are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue."); *Thomas v. Rehab. Services of Columbus, Inc.*, 45 F.Supp.2d 1375, 1378 (M.D. Ga. 1999)(stating that where transfer to another federal forum is appropriate, the proper remedy in enforcing a . forum selection clause is to transfer the case, and, accordingly, treating a Rule 12(b)(3) motion as a motion to transfer).   Accordingly, even if the Court determines that the forum selection clause

- 8 -

at issue in this case is enforceable as to all of ARE's claims, including the claim under FDUTPA, dismissal would be inappropriate. Instead, the Court should enter an Order transferring the case to the United States District Court for the Southern District of California in San Diego.

## III.     CONCLUSION

For the foregoing reasons, ARE respectfully requests entry of an Order denying Defendants' Motion as it relates to the ARE's FDUTPA claim and transferring ARE's remaining claims to the United States District Court, Southern District of California.

Brant, Abraham, Reiter, McCormick & Greene, P.A.

/s/Gregory Williamson
Christopher J. Greene
Florida Bar No. 516015
cjgreene@barmg.com
Gregory Williamson
Florida Bar No. 0092990
gawilliamson@barmg.com
50 North Laura Street, Suite 2750
Jacksonville, Florida 32202
Mail: P.O. Box 4548 (32201-4548)
Telephone: (904) 358-2750
Facsimile: (904) 353-1166
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished via the CM/ECF System

and U.S. Mail to: Adam D. Palmer, PA, Schoeppl & Burke, PA, 4651 North Federal Highway, Boca

Raton, FL 33431, this 10th day of March, 2008.


/s/ Gregory Williamson
Gregory Williamson
E-Mail: gawilliamson@barmg.com

00043909.DOC/6256.1

- 10 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES, LLC,

     Plaintiff,

v.

DEL MAR DATATRAC, INC., et al.,

     Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE

THIS CAUSE is before the Court upon Defendants' Motion to Transfer Venue Pursuant

to 28 U.S.C. § 1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3), Fed. R.

Civ. P., and Incorporated Motion for Enlargement of Time and Supporting Memorandum of

Law, filed February 15, 2008 (D.E. 13).  Plaintiff filed its Response in Opposition on March 10,

2008 (D.E. 17).

THE COURT has considered the Motion and the pertinent portions of the record and is

otherwise fully advised in the premises.  By way of background, this is an action arising out of

Plaintiff's purchase of a custom software system from Defendants.  (*See generally* Compl.)

According to Plaintiff, Defendants made a number of representations regarding the software

solution that they would provide to Plaintiff.  (*See* Compl. ¶¶ 10-13.)  Plaintiff alleges that such

representations induced it to purchase the subject software solution from Defendants and that

such representations were false when made.  (*See* Compl. ¶¶ 14-22.)  In connection with such

purchase, the parties entered into a sales agreement (the "Sales Agreement").  (Compl. ¶ 16.)

Plaintiff filed the Complaint on January 3, 2008, alleging four causes of action: fraud in the

inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count IV),[1] and

violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V).[2] (*See*

*generally* Compl.)  Defendants bring the instant Motion to transfer this action to a district court

in California, pursuant to the forum selection clause that appears in the End User License

Agreement ("EULA") between the parties.  (Defs.' Mot. 4.)

Section 1404(a) provides, in relevant part, that "[f]or the convenience of the parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought."  District courts have broad discretion over

issues related to venue transfer.  *See, e.g., Del Monte v. Dole*, 136 F.Supp.2d 1271, 1281 (S.D.

Fla. 2001).  Section 1404(a) is intended to allow the district court discretion to decide motions to

transfer venue according to an "individualized, case-by-case consideration of convenience and

fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  Moreover, the "presence of a

forum-selection clause such as the parties entered into in this case will be a significant factor that

figures centrally in the district court's calculus."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988).  Indeed, "the venue mandated by a choice of forum clause rarely will be outweighed

by other 1404(a) factors."  *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  The opponent

of the motion to enforce a forum selection clause "bears the burden of persuading the court that

the contractual forum is sufficiently inconvenient to justify retention of the dispute."  *Id.*

---

[1] Plaintiff appears to have erroneously styled its breach of contract claim as Count IV, despite the fact that there is no Count III.

[2] Plaintiff appears to have erroneously styled its violation of Florida's Deceptive and Unfair Trade Practices Act as Count V, despite the fact that there is no Count III.

2

Defendants first argue that the EULA contains a valid forum selection clause that applies

to the instant lawsuit. (Defs.'s Mot. 13-15.)  The Court agrees.[3]  In its Complaint, Plaintiff

alleges four causes of action which all relate to the Sales Agreement.  (*See generally* Compl. ¶¶

26-51.)  The fact that the Sales Agreement itself does not contain a forum selection clause is not

dispositive.  "A document may be incorporated by reference in a contract if the contract

specifically describes the document and expresses the parties' intent to be bound by its terms."

*Mgmt Computer Controls, Inc. v. Charles Perry Const.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999)

(citations omitted).  The contract must contain more than a mere reference to the collateral

document, but it need not state that it is "subject to" the provisions of the collateral document to

incorporate its terms.  *Id.* (citing *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA

1998) (holding that no particular "magic words" are required to incorporate a document by

reference).  It is sufficient that the general language of the incorporating clause reveals an intent

to be bound by the terms of the collateral document.  *Id.* (citing *Sharpe v. Lytal & Reiter, Clark,*

*Sharpe, Roca, Fountain, Williams*, 702 So.2d 622, 623 (Fla. 4th DCA 1997).

The Sales Agreement includes more than a mere reference to the EULA.  In fact, the

Sales Agreement makes clear that Plaintiff is expected to comply with and be bound by the

EULA as a condition to entering into the Sales Agreement.  Specifically, the Sales Agreement

states:

> "[Plaintiff] agrees to review, sign and comply with the End User License Agreement
> which will be presented to [Plaintiff] upon installation of the Licensed Program, a form of
> which is attached hereto as Addendum D. . . . The Sales Agreement together with all

---

[3] Indeed, Plaintiff does not appear to seriously dispute this argument, choosing to focus
almost entirely on the forum selection clause's applicability to the FDUTPA claim.  (*See* Pl.'s
Resp. 5-7.)

3

Addenda A, B, C and D, constitute the entire agreement of the parties on the subject matter hereof."

(Compl. Ex. A.)  This language demonstrates that the parties intended that the EULA and all of its provisions would become part of the Sales Agreement and would bind the parties.  The forum selection clause does not apply solely to disputes over the EULA, for once the EULA was properly incorporated by reference into the Sales Agreement, the Sales Agreement and all its addenda formed one document, to be read together.  *See Computer Sales Int'l, Inc. v. State Dep't of Revenue*, 656 So.2d 1382, 1384 (Fla. 1st DCA 1995).  Thus, the forum selection clause was properly incorporated by reference into the Sales Agreement.

Next, Defendants argue that the EULA's forum selection clause is mandatory.  (Defs.' Mot. 10-11.)  "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere.  A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'"  *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999)).  The Court has no doubt that the forum selection clause at issue in this case is mandatory.  The clause states, in pertinent part: "the courts located in San Diego, California, USA, will constitute the sole and exclusive forum for the resolution of any and all disputes arising out of or in connection with this EULA."  (Compl. Ex. A, Addendum D.)  By these terms, the parties have expressed their intent to limit venue to one particular location: San Diego.

Additionally, Defendants claim that the forum selection clause applies not only to the breach of contract claim but also to other claims raised in the Complaint.  (Defs.' Mot. 12-13.)  As for the fraud in the inducement and negligent misrepresentation claims, because these claims

4

arose out of the contract, they are governed by the parties' agreement concerning venue. *See*

*generally Mercedes Homes, Inc. v. Osborne*, 687 So.2d 840, 841 (Fla. 2d DCA 1996). The

violation of FDUTPA claim, though, presents a more difficult decision, for it is an independent

statutory claim that does not arise directly out of the contract.

Plaintiff argues that the forum selection clause cannot be enforced as to the FDUTPA

claim because it would undermine the effectiveness of the statute (Pl.'s Resp. 6-7), relying upon

the holding in *Mgmt Computer Controls, Inc.* 743 So.2d at 632. In *Mgmt Computer Controls,*

*Inc.*, the court found that the venue selection clause placing venue outside of Florida could not be

applied to the plaintiff's FDUTPA claim because, given that such claim neither arose out of the

parties' contract nor existed solely for the benefit of the parties, enforcement of the venue clause

would subvert the purposes of the statute. *Id.* However, Florida state courts interpreting *Mgmt*

*Computer Controls, Inc.* have rejected the idea that such case created a *per se* rule against

enforcing a forum selection clause as to FDUTPA claims. *See SAI Ins. Agency, Inc. v. Applied*

*Systems, Inc.*, 858 So.2d 401, 404 (Fla. 1st DCA 2003); *World Vacation Travel, S.A. de C.V. v.*

*Brooker*, 799 So.2d 410, 412-13 (Fla. 3d DCA 2001). Additionally, the Court does not believe

that having a California court consider the FDUTPA claim would undermine the purposes of

FDUTPA. Transferring this case to California would not deprive Plaintiff of the opportunity to

pursue his claim for violation of FDUTPA. Moreover, courts in other states, such as California,

are well-equipped to and quite capable of applying foreign law, including FDUTPA. *See, e.g.,*

*Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp. 2d 240, 266-67 (S.D.N.Y. 2001) (considering a

FDUTPA claim); *see also Golden Needles Knitting and Glove Co., Inc. v. Dynamic Marketing*

*Enterprises, Inc.*, 766 F.Supp. 421, 430 (W.D.N.C. 1991) (same). Finally, the Court does not

5

believe that permitting the transfer of a FDUTPA claim pursuant to a valid forum selection clause would neither make future plaintiffs less likely to bring FDUTPA claims nor make persons or entities more likely to violate FDUTPA.  In fact, allowing a FDUTPA claim to automatically defeat a valid forum selection clause would potentially wreak havoc on contractual rights, for the assertion of a FUDPTA claim, no matter how tangential or weak, could prevent a party from obtaining the full benefit of such party's bargained-for forum selection clause.  A party would be able to nullify an unfavorable forum selection clause merely by bringing suit in Florida and alleging a violation of FDUTPA.

In this Circuit, forum selection clauses are broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract and to promote enforcement of those clauses consistent with the parties' intent.  *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987).  Clauses referencing "any lawsuit regarding this agreement" have been broadly construed to include extra-contractual claims.  *See Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099, at *2 (M.D. Fla. 2006) (citations omitted).  Additionally, the Eleventh Circuit held that the clause in the *Ricoh Corp.* case, which referred to any "case or controversy arising under or in connection with this Agreement," covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract."  810 F.2d at 1070.  In the case at hand, the forum selection clause states that it governs "any and all disputes arising out of or in connection with this EULA."  (Compl. Ex. A, Addendum D.)  The language used in this forum selection clause is practically identical to that used in *Ricoh Corp.*  Thus, the Court finds that the FDUTPA claim arises indirectly from the business relationship evidenced by the Sales Agreement, of which the EULA forms part, *see Ricoh Corp.*, 810 F.2d at

6

1070, and that, as such, the forum selection clause applies to the FDUTPA claim.

Finally, Defendants claim that an analysis of all relevant factors to be considered by this Court demonstrates that the forum selection clause should be enforced as written. (Defs.' Mot. 6-9.) Courts investigating whether to transfer venue in connection with a forum selection clause should consider convenience and fairness. *See Van Dusen*, 376 U.S. at 622. The presence of a valid forum selection clause dictates that Plaintiff bears the burden of demonstrating that the forum selection clause should not be enforced because of convenience or fairness considerations. *See In re Ricoh Corp.*, 870 F.2d at 573. Having reviewed the parties' briefs, the Court finds that Plaintiff has failed to carry its burden. Forcing Defendants, which are California and Wisconsin corporations, to litigate this action in Florida is as inconvenient to them as requiring Plaintiff, a Florida company, to litigate this action in California. Further, there has been no showing that the vast majority of witnesses or evidence is located in Florida. Finally, Plaintiff has not demonstrated that fairness considerations mandate allowing this action to proceed in Florida. Plaintiff has not alleged any fraud in connection with the negotiation of the forum selection clause, and there is no evidence that the parties did not negotiate at arms' length with roughly equal bargaining power. (*See* Defs.' Mot. 9.) Thus, the parties' forum selection clause shall be enforced as written and the entire case shall be transferred to the district court in San Diego, California. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Transfer Venue is GRANTED and the Motion to Dismiss is DENIED. The Clerk of the Court is hereby DIRECTED to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action to the San Diego division of the United States District Court for the Southern

7

District of California for all further proceedings.  It is further

ORDERED AND ADJUDGED that the Motion for Enlargement of Time is DENIED AS

MOOT and may be refiled in the proper court once the case has been transferred.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of March, 2008.


_____

URSULA UNGARO
UNITED STATES DISTRICT JUDGE


copies provided:
Counsel of Record

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES, LLC,

      Plaintiff,

v.

DEL MAR DATATRAC, INC., et al.,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO TRANSFER VENUE

      THIS CAUSE is before the Court upon Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and Alternative Motion to Dismiss Pursuant to Rule 12(b)(3), Fed. R. Civ. P., and Incorporated Motion for Enlargement of Time and Supporting Memorandum of Law, filed February 15, 2008 (D.E. 13). Plaintiff filed its Response in Opposition on March 10, 2008 (D.E. 17).

      THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises. By way of background, this is an action arising out of Plaintiff's purchase of a custom software system from Defendants. (*See generally* Compl.) According to Plaintiff, Defendants made a number of representations regarding the software solution that they would provide to Plaintiff. (*See* Compl. ¶¶ 10-13.) Plaintiff alleges that such representations induced it to purchase the subject software solution from Defendants and that such representations were false when made. (*See* Compl. ¶¶ 14-22.) In connection with such purchase, the parties entered into a sales agreement (the "Sales Agreement"). (Compl. ¶ 16.)

Plaintiff filed the Complaint on January 3, 2008, alleging four causes of action: fraud in the

inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count IV),[1] and

violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V).[2] (*See*

*generally* Compl.) Defendants bring the instant Motion to transfer this action to a district court

in California, pursuant to the forum selection clause that appears in the End User License

Agreement ("EULA") between the parties. (Defs.' Mot. 4.)

Section 1404(a) provides, in relevant part, that "[f]or the convenience of the parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought." District courts have broad discretion over

issues related to venue transfer. *See, e.g., Del Monte v. Dole*, 136 F.Supp.2d 1271, 1281 (S.D.

Fla. 2001). Section 1404(a) is intended to allow the district court discretion to decide motions to

transfer venue according to an "individualized, case-by-case consideration of convenience and

fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Moreover, the "presence of a

forum-selection clause such as the parties entered into in this case will be a significant factor that

figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988). Indeed, "the venue mandated by a choice of forum clause rarely will be outweighed

by other 1404(a) factors." *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). The opponent

of the motion to enforce a forum selection clause "bears the burden of persuading the court that

the contractual forum is sufficiently inconvenient to justify retention of the dispute." *Id.*

---

[1] Plaintiff appears to have erroneously styled its breach of contract claim as Count IV, despite the fact that there is no Count III.

[2] Plaintiff appears to have erroneously styled its violation of Florida's Deceptive and Unfair Trade Practices Act as Count V, despite the fact that there is no Count III.

2

Defendants first argue that the EULA contains a valid forum selection clause that applies to the instant lawsuit. (Defs.'s Mot. 13-15.) The Court agrees.[3] In its Complaint, Plaintiff alleges four causes of action which all relate to the Sales Agreement. (*See generally* Compl. ¶¶ 26-51.) The fact that the Sales Agreement itself does not contain a forum selection clause is not dispositive. "A document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Mgmt Computer Controls, Inc. v. Charles Perry Const.*, 743 So.2d 627, 631 (Fla. 1st DCA 1999) (citations omitted). The contract must contain more than a mere reference to the collateral document, but it need not state that it is "subject to" the provisions of the collateral document to incorporate its terms. *Id.* (citing *Quix Snaxx, Inc. v. Sorensen*, 710 So.2d 152, 154 (Fla. 3d DCA 1998) (holding that no particular "magic words" are required to incorporate a document by reference). It is sufficient that the general language of the incorporating clause reveals an intent to be bound by the terms of the collateral document. *Id.* (citing *Sharpe v. Lytal & Reiter, Clark, Sharpe, Roca, Fountain, Williams*, 702 So.2d 622, 623 (Fla. 4th DCA 1997).

The Sales Agreement includes more than a mere reference to the EULA. In fact, the Sales Agreement makes clear that Plaintiff is expected to comply with and be bound by the EULA as a condition to entering into the Sales Agreement. Specifically, the Sales Agreement states:

> "[Plaintiff] agrees to review, sign and comply with the End User License Agreement which will be presented to [Plaintiff] upon installation of the Licensed Program, a form of which is attached hereto as Addendum D. . . . The Sales Agreement together with all

---

[3] Indeed, Plaintiff does not appear to seriously dispute this argument, choosing to focus almost entirely on the forum selection clause's applicability to the FDUTPA claim. (*See* Pl.'s Resp. 5-7.)

3

Addenda A, B, C and D, constitute the entire agreement of the parties on the subject matter hereof."

(Compl. Ex. A.) This language demonstrates that the parties intended that the EULA and all of its provisions would become part of the Sales Agreement and would bind the parties. The forum selection clause does not apply solely to disputes over the EULA, for once the EULA was properly incorporated by reference into the Sales Agreement, the Sales Agreement and all its addenda formed one document, to be read together. *See Computer Sales Int'l, Inc. v. State Dep't of Revenue*, 656 So.2d 1382, 1384 (Fla. 1st DCA 1995). Thus, the forum selection clause was properly incorporated by reference into the Sales Agreement.

Next, Defendants argue that the EULA's forum selection clause is mandatory. (Defs.' Mot. 10-11.) "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere. A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'" *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1261 (11th Cir. 1999)). The Court has no doubt that the forum selection clause at issue in this case is mandatory. The clause states, in pertinent part: "the courts located in San Diego, California, USA, will constitute the sole and exclusive forum for the resolution of any and all disputes arising out of or in connection with this EULA." (Compl. Ex. A, Addendum D.) By these terms, the parties have expressed their intent to limit venue to one particular location: San Diego.

Additionally, Defendants claim that the forum selection clause applies not only to the breach of contract claim but also to other claims raised in the Complaint. (Defs.' Mot. 12-13.) As for the fraud in the inducement and negligent misrepresentation claims, because these claims

4

arose out of the contract, they are governed by the parties' agreement concerning venue. *See generally Mercedes Homes, Inc. v. Osborne*, 687 So.2d 840, 841 (Fla. 2d DCA 1996). The violation of FDUTPA claim, though, presents a more difficult decision, for it is an independent statutory claim that does not arise directly out of the contract.

Plaintiff argues that the forum selection clause cannot be enforced as to the FDUTPA claim because it would undermine the effectiveness of the statute (Pl.'s Resp. 6-7), relying upon the holding in *Mgmt Computer Controls, Inc.* 743 So.2d at 632. In *Mgmt Computer Controls, Inc.*, the court found that the venue selection clause placing venue outside of Florida could not be applied to the plaintiff's FDUTPA claim because, given that such claim neither arose out of the parties' contract nor existed solely for the benefit of the parties, enforcement of the venue clause would subvert the purposes of the statute. *Id.* However, Florida state courts interpreting *Mgmt Computer Controls, Inc.* have rejected the idea that such case created a *per se* rule against enforcing a forum selection clause as to FDUTPA claims. *See SAI Ins. Agency, Inc. v. Applied Systems, Inc.*, 858 So.2d 401, 404 (Fla. 1st DCA 2003); *World Vacation Travel, S.A. de C.V. v. Brooker*, 799 So.2d 410, 412-13 (Fla. 3d DCA 2001). Additionally, the Court does not believe that having a California court consider the FDUTPA claim would undermine the purposes of FDUTPA. Transferring this case to California would not deprive Plaintiff of the opportunity to pursue his claim for violation of FDUTPA. Moreover, courts in other states, such as California, are well-equipped to and quite capable of applying foreign law, including FDUTPA. *See, e.g., Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp. 2d 240, 266-67 (S.D.N.Y. 2001) (considering a FDUTPA claim); *see also Golden Needles Knitting and Glove Co., Inc. v. Dynamic Marketing Enterprises, Inc.*, 766 F.Supp. 421, 430 (W.D.N.C. 1991) (same). Finally, the Court does not

5

believe that permitting the transfer of a FDUTPA claim pursuant to a valid forum selection clause would neither make future plaintiffs less likely to bring FDUTPA claims nor make persons or entities more likely to violate FDUTPA. In fact, allowing a FDUTPA claim to automatically defeat a valid forum selection clause would potentially wreak havoc on contractual rights, for the assertion of a FUDPTA claim, no matter how tangential or weak, could prevent a party from obtaining the full benefit of such party's bargained-for forum selection clause. A party would be able to nullify an unfavorable forum selection clause merely by bringing suit in Florida and alleging a violation of FDUTPA.

In this Circuit, forum selection clauses are broadly construed to effectuate an orderly and efficient resolution of all claims arising between the parties to a contract and to promote enforcement of those clauses consistent with the parties' intent. *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987). Clauses referencing "any lawsuit regarding this agreement" have been broadly construed to include extra-contractual claims. *See Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099, at *2 (M.D. Fla. 2006) (citations omitted). Additionally, the Eleventh Circuit held that the clause in the *Ricoh Corp.* case, which referred to any "case or controversy arising under or in connection with this Agreement," covered "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." 810 F.2d at 1070. In the case at hand, the forum selection clause states that it governs "any and all disputes arising out of or in connection with this EULA." (Compl. Ex. A, Addendum D.) The language used in this forum selection clause is practically identical to that used in *Ricoh Corp.* Thus, the Court finds that the FDUTPA claim arises indirectly from the business relationship evidenced by the Sales Agreement, of which the EULA forms part, *see Ricoh Corp.*, 810 F.2d at

6

1070, and that, as such, the forum selection clause applies to the FDUTPA claim.

Finally, Defendants claim that an analysis of all relevant factors to be considered by this Court demonstrates that the forum selection clause should be enforced as written. (Defs.' Mot. 6-9.) Courts investigating whether to transfer venue in connection with a forum selection clause should consider convenience and fairness. *See Van Dusen*, 376 U.S. at 622. The presence of a valid forum selection clause dictates that Plaintiff bears the burden of demonstrating that the forum selection clause should not be enforced because of convenience or fairness considerations. *See In re Ricoh Corp.*, 870 F.2d at 573. Having reviewed the parties' briefs, the Court finds that Plaintiff has failed to carry its burden. Forcing Defendants, which are California and Wisconsin corporations, to litigate this action in Florida is as inconvenient to them as requiring Plaintiff, a Florida company, to litigate this action in California. Further, there has been no showing that the vast majority of witnesses or evidence is located in Florida. Finally, Plaintiff has not demonstrated that fairness considerations mandate allowing this action to proceed in Florida. Plaintiff has not alleged any fraud in connection with the negotiation of the forum selection clause, and there is no evidence that the parties did not negotiate at arms' length with roughly equal bargaining power. (*See* Defs.' Mot. 9.) Thus, the parties' forum selection clause shall be enforced as written and the entire case shall be transferred to the district court in San Diego, California. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Transfer Venue is GRANTED and the Motion to Dismiss is DENIED. The Clerk of the Court is hereby DIRECTED to take all necessary steps and procedures to effect the expeditious transfer of the above-styled action to the San Diego division of the United States District Court for the Southern

7

District of California for all further proceedings.  It is further

ORDERED AND ADJUDGED that the Motion for Enlargement of Time is DENIED AS

MOOT and may be refiled in the proper court once the case has been transferred.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of March, 2008.


*Ursula Ungaro*
_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE


copies provided:
Counsel of Record

8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 08-20014-CIV-UNGARO

AMERICAN RESIDENTIAL EQUITIES, LLC,

      Plaintiff,

v.

DEL MAR DATATRAC, INC., et al.,

      Defendants.

_____/

## ADMINISTRATIVE ORDER CLOSING CASE

THIS CAUSE is before the Court *sua sponte*.

THE COURT being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that for administrative purposes this case is hereby CLOSED.

It is further

ORDERED AND ADJUDGED that all pending motions are hereby DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th day of March, 2008.

                                     _Ursula Ungaro_
                                 URSULA UNGARO
                                 UNITED STATES DISTRICT JUDGE

copies provided:
Magistrate Judge O'Sullivan

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I (a) PLAINTIFFS | DEFENDANTS '08 CV 0545 BEN POR |
|---|---|
| **American Residential Equities, LLC** | **Del Mar Datarac, Inc. And Fiserv, Inc.** |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   State of Delaware (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   San Diego (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Christopher John Greene 50 North Laura Street Suite 2750 Jacksonville, FL 32202 904-358-2750 | Adam Douglas Palmer 4651 N. Federal Highway Boca Raton, FL 33431 561-394-5602 |

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

### 28:1332

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☒ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)     *Southern District of Florida*

☐ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☒ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ | Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE _____   Docket Number _____

DATE _____     SIGNATURE OF ATTORNEY OF RECORD _____