1  Erwin J. Shustak (CA Bar No. 119152)
   Email: shustak@shufirm.com
2  Robert Hill (CA Bar No. 241624)
   Email: rhill@shufirm.com
3  SHUSTAK FROST & PARTNERS, P.C.
   410 West "A" Street, Suite 2330
4  San Diego, California 92101
   Telephone: (619) 696-9500
5  Facsimile: (619) 615-5290

6  Attorneys for Plaintiff
   AMERICAN RESIDENTIAL EQUITIES, LLC
7

8                    UNITED STATES DISTRICT COURT

9
                   SOUTHERN DISTRICT OF CALIFORNIA
10

11 AMERICAN RESIDENTIAL EQUITIES,        ) Case No.  08-cv-00545-BEN (POR)
   LLC,                                  )
12                                       ) Assigned to the Honorable Roger T. Benitez
                       Plaintiff,        )
13                                       )
          vs.                            ) **PLAINTIFF AMERICAN RESIDENTIAL**
14                                       ) **EQUITIES, LLC'S OPPOSITION TO**
   DEL MAR DATATRAC, INC and FISERV,     ) **DEFENDANTS' PARTIAL MOTION TO**
15 INC.,                                 ) **DISMISS**
                                         )
16                     Defendants.       ) Date:        August 11, 2008
                                         ) Time:        10:30 a.m.
17                                       ) Courtroom:   3
                                         )
18 _____)

19       Plaintiff AMERICAN RESIDENTIAL EQUITIES, LLC ("ARE") submits this Opposition

20 to the Partial Motion to Dismiss Complaint filed by Defendants DEL MAR DATATRAC, INC.

21 ("Del Mar") and FISERV, INC. ("Fiserv") (Del Mar and Fiserv are collectively referred to as

22 "Defendants").

23 **I.       SUMMARY OF ALLEGED FACTS**

24

25       ARE's complaint seeks damages based on Defendants fraudulently inducing ARE to enter

26 into a contractual relationship and then, after the contract was entered into, breaching the contract.

27

28
                                          1

1    ARE is an investment company specializing in acquiring, managing, and liquidating

2  undervalued first mortgage loans. (Compl., ¶7). ARE purchases discounted debt instruments from

3  companies in the business of originating such loans. (Compl., ¶7) Although ARE outsources the

4  primary servicing of these loans to national servicers, primarily General Motors Acceptance

5  Corporation ("GMAC"), ARE oversees and works in conjunction with these servicing companies.

6  (Compl., ¶8)

7    In approximately July or August of 2006, ARE began searching for a new software system

8  that would allow it to better serve its needs. (Compl., ¶9) Of particular importance to ARE was

9  that the software integrate seamlessly with GMAC's servicing software systems. (Compl., ¶9)

10    Defendant Del Mar made a proposal to ARE "[o]n or about September 11, 2006." (Compl.,

11  ¶10) As detailed in the complaint, Del Mar, "acting as an agent of Fiserv," (Compl., ¶10) made a

12  number of representations during this proposal, including the following:

13    • Del Mar could use its "DataTrac" software system as a base product for a customized

14      solution to facilitate ARE's mortgage operations. (Compl., ¶10)

15    • Del Mar's customized system would allow ARE to gain control over its loan portfolios

16      by centralizing data relating to underwriting, secondary marketing, documentation,

17      funding, shipping, accounting and interim servicing, and insuring. (Compl., ¶11)

18    • Del Mar promised its system could be implemented without operational downtime, its

19      products were "user-friendly," and little training would be required. (Compl., ¶12)

20    • Del Mar could create an interface to enable weekly boarding of ARE servicing

21      information to GMAC and daily updates of servicing information from GMAC to ARE

22      (Compl., ¶13)

23    • Del Mar promised its software solution was "fast, easy and affordable." (Compl., ¶12)

24    Based on Del Mar's representations, ARE agreed to Del Mar's proposal. (Compl., ¶15)

25  ARE "only agreed to Del Mar's proposal because of the promised functionality and its assertion that

26  the Del Mar software solution would provide ARE with an almost immediate return on investment."

27  (Compl., ¶15) ARE and Del Mar subsequently entered into the Sales Agreement. (Compl., Ex. A)

28

2

1    Unfortunately, as detailed in the complaint, Del Mar's representations proved untrue:

2    • Contrary to Del Mar's assertion it could create a customized system to allow ARE to

3    gain control over its loan portfolios, Del Mar instead repeatedly tried to use a previously

4    designed or other made to order system that was not suitable to ARE.  (Compl., ¶19)

5    • Contrary to Del Mar's representations that its system would require no downtime, was

6    user-friendly, and would require little training, ARE required weeks of training to use

7    Del Mar's "extremely cumbersome, illogical interface."  (Compl., ¶21)

8    • Del Mar did not provide a service to permit ARE to enable weekly boarding of ARE

9    servicing information to GMAC or provide daily updates from GMAC to ARE; instead,

10    nearly a year after the implementation process, ARE is still unable to download data

11    from GMAC.  (Compl., ¶18)

12    • As detailed in the complaint and summarized above, Del Mar's system was certainly not

13    "fast, easy and affordable" as Del Mar had represented.  In addition, Del Mar billed ARE

14    for numerous custom reports that were not part of the agreement between the parties.

15    (Compl., ¶20)

16    ARE made numerous attempts to informally resolve this matter with Del Mar; Del Mar

17    ignored these efforts.  (Compl., ¶23)  Instead of trying to resolve their dispute, Fiserv's Chief

18    Financial Officer drafted a "dunning letter" on Fiserv letterhead to ARE, demanding ARE pay for

19    the defective software system installed by its agent Del Mar.  (Compl., ¶24, Ex. B)

20    Based on the above, ARE filed this complaint in United States District Court for the

21    Southern District of Florida, alleging fraud in the inducement, negligent misrepresentation, breach

22    of contract, and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA")

23    against Fiserv and its agent Del Mar.  (Compl., ¶¶26-51)[1]  After the court transferred the action to

24    this district, Defendants filed this partial motion to dismiss.

25

26

27

28    [1] The third and fourth causes of action for breach of contract and violation of the FDUTPA, respectively, are incorrectly numbered as counts four and five in the complaint.

3

## II.    LEGAL STANDARD

In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the nonmoving party and accept all allegations of material fact as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint should not be dismissed "unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 338. Under these guidelines, "it is only the extraordinary case in which dismissal is proper." *U.S. v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

## III.    LEGAL ARGUMENT

Defendants' arguments concerning ARE's causes of action for fraud in the inducement, negligent misrepresentation, and breach of contract are without merit.[2] First, Fiserv is correctly named as a Defendant because ARE has adequately alleged an agency relationship between Fiserv and Del Mar. Second, ARE has alleged sufficient facts to support its causes of action for fraud and misrepresentation. Third, ARE has pled fraud with the particularity required under Federal Rule of Civil Procedure 9(b).

### A.    Fiserv Is an Appropriate Defendant Pursuant to its Agency Relationship with Del Mar

ARE has correctly named Fiserv as a Defendant. Defendants seek to confuse the issue, arguing that Fiserv cannot be held liable solely by virtue of its status as a parent company of Del Mar. But ARE is not seeking to hold Fiserv liable solely on this basis; instead, ARE has properly alleged that Del Mar is an agent of Fiserv, and, as a result of this agency, Fiserv is liable for Del Mar's actions. These allegations are sufficient, and Fiserv's request to be dismissed must be denied.

A principal is liable for all rights and liabilities of its agent from transactions within the agent's authority. *Cal. Civ. Proc. §2330*. "'It is a settled rule of law of agency that a principal is

---

[2] This Opposition will not address Defendants' argument that ARE's FDUTPA claim should be dismissed based upon the contractual choice-of-law provision within the parties' Sales Agreement.

1  responsible to third persons for the ordinary contracts and obligations of his agent with third

2  persons.…'" *Luce v. Sutton*, 115 Cal.App.2d 428, 433 (1953), quoting *Geary St., P. & O.R. Co. v.*

3  *Rolph*, 189 Cal. 59, 64 (1922); *Marr v. Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 679 (1940).

4  This is true even if the contract is made solely in the name of the agent and does not purport to bind

5  the principal. *Luce*, 115 Cal.App. at 433.

6      Here, ARE has adequately alleged that Del Mar was an agent of Fiserv. Del Mar is

7  identified as Fiserv's agent throughout the complaint. (*See* Compl., ¶¶10, 26, 28, 29, 30, 33, 35, 36,

8  37, 45) As a result, the wrongful acts alleged against Del Mar flow to its principal Fiserv. *Luce*,

9  115 Cal.App.2d at 433.

10     ARE's allegations concerning the agency relationship are sufficient to withstand a motion to

11  dismiss. The allegation of agency is one of fact and not of law; as a result, a plaintiff does not need

12  to allege precise facts proving an agency relationship. *Kiseskey v. Carpenters' Trust for So.*

13  *California*, 144 Cal.App.3d 222, 230 (1983) (holding that complaint's allegation that parties were

14  agents of each other was sufficient); *see Skopp v. Weaver*, 16 Cal.3d 432, 437 (1976). Instead, a

15  general statement that an agency relationship exists is all that is required to withstand a motion to

16  dismiss. *Kiseskey*, 144 Cal.App.3d at 230. ARE, therefore, has met its burden by alleging

17  throughout its complaint that Del Mar is an agent of Fiserv.

18     Notably, ARE has included specific facts concerning the agency relationship existing

19  between Del Mar and Fiserv. ARE's complaint points to a particular "dunning letter" it received

20  from *Fiserv's* Chief Financial Officer that was written on *Fiserv's* letter-head. (Compl., Exhibit B)

21  This type of evidence is not required in order to allege agency, but its inclusion demonstrates the

22  speciousness of Defendants' argument.

23      **B.    ARE Can Properly Assert Tort Causes of Action Based on Defendants Inducing**

24          **ARE to Enter Into the Contract Through Misrepresentations**

25      ARE can properly assert causes of action for fraud in the inducement, negligent

26  misrepresentation, and violation of the FDUPTA based upon Defendants' fraudulent statements that

27  induced ARE to enter into the original Sales Agreement.

28

08-cv-00545-BEN (POR)

PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Defendants mistakenly rely upon the "economic loss" doctrine for the proposition that ARE must be limited in its relief solely to breach of contract remedies. The economic loss doctrine, however, does not apply when a party alleges they were ***fraudulently induced*** into entering into a contract. In these instances, tort causes of action like those alleged by ARE are permitted:

> Tort damages have been permitted in contract cases where a breach of duty directly causes physical injury; for breach of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in violation of fundamental public policy; **or where the contract was fraudulently induced**.

*Erlich v. Menezes*, 21 Cal.4th 543, 551-52 (1999) (emphasis added) (citations omitted).

As a result, "when one party commits a fraud during the contract formation or performance, the injured party may recover in contract **and tort**." *Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70, 78 (1993) (emphasis added).

Here, ARE has brought causes of action for fraud in the inducement, negligent misrepresentation, and violation of the FDUPTA based upon Defendants inducing ARE to enter into the sales contract through fraudulent statements. The fraudulent statements are described in detail in the complaint and were summarized above. (*See* Compl., ¶¶10-13) The complaint is clear in alleging these statements were made "in order to induce ARE to enter into a Sales Agreement" (*See* Compl., ¶¶28, 35) and that ARE "justifiably relied on the misrepresentations in entering the Sales Agreement." (*See* Compl., ¶¶31, 38) As a result, because ARE's allegations are separate and apart from the actual performance of the contract and instead concern Defendants' efforts to fraudulently induce ARE to enter into the contract in the first place, ARE is entitled to pursue these tort causes of action. *Harris*, 14 Cal.App.4th at 78.

Permitting ARE to include these tort causes of action is in accord with the policy behind the economic loss doctrine. The general rule limiting a party to breach of contract damages for a party's failure to abide by a contract "assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach." *Robinson Helicopter Company, Inc. v. Dana Corporation*, 34 Cal.4th 979, 992 (2004). Because the parties can negotiate the risk of loss between themselves, "it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him

1    only such benefits as he expected to receive…." *Id.* at 992-93, quoting *Applied Equipment Corp. v.*

2    *Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 517 (1994).

3         A party cannot, however, reasonably negotiate the risk of loss in a situation where they are

4    fraudulently induced into entering into the contract in the first place: "A party to a contract cannot

5    rationally calculate the possibility that the other party will deliberately misrepresent terms critical to

6    that contract." *Id.* at 993, quoting Steven C. Tourek, *Bucking the "Trend": The Uniform*

7    *Commercial Code, the Economic Loss Doctrine, and Common Law Causes of Action for Fraud and*

8    *Misrepresentation*, 84 Iowa L. Rev. 875, 894. (1989). While parties can be presumed to understand

9    and allocate the risks relating to many aspects of their respective relationship, these parties "cannot,

10   and should not, be expected to anticipate fraud and dishonesty in every transaction." *Id.*, quoting

11   Tourek, 84 Iowa L. Rev. at 909.  The United States District Court, Western District of Wisconsin,

12   has eloquently summarized the issue:

13            Although it makes sense to allow parties to allocate the risk of mistakes or accidents
              that lead to economic losses, it does not make sense to extend the doctrine to
14            intentional acts taken by one party to subvert the purposes of a contract. Although
              theoretically parties could include contractual provisions discussing the allocation of
15            responsibility when one party intentionally lies or misleads the other, it would not be
              conducive to amicable commercial relations to require parties to include such clauses
16            in contracts. Expressing such a basic lack of trust in the other party would be likely
              to sour a deal from the start.
17
              A party to a contract cannot rationally calculate the possibility that the other party
18            will deliberately misrepresent terms critical to that contract. **Public policy is better
              served by leaving the possibility of an intentional tort suit hanging over the head
19            of a party considering outright fraud**.

20   *Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F.Supp. 1227, 1236 (W.D. Wis. 1997) (emphasis

21   added).

22        ARE is in the precise situation contemplated by the *Harris*, *Robinson*, and *Stoughton* courts.

23   ARE's complaint sounds in fraud; it is based upon Defendants' misrepresentations that they could

24   provide a custom software product to satisfy ARE's needs.  ARE has properly alleged that, but for

25   these misrepresentations, ARE would not have entered into the Sales Agreement.  ARE could not

26   "rationally calculate the possibility that [Del Mar would] deliberately misrepresent [these] terms

27

28

7

1  critical to" their contract. *Id*.  As a result, ARE must be permitted to proceed on these tort claims,

2  as well as its breach of contract claim.

3          **C.      ARE Has Alleged Fraud with the Requisite Particularity**

4          ARE has alleged its fraud in the inducement and negligent misrepresentation causes of

5  action with the particularity required by Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires

6  that, when averments of fraud are made, the circumstances constituting the alleged fraud "must be

7  'specific enough to give defendants notice of the particular misconduct which is alleged to

8  constitute the fraud charged so that they can defend against the charge and not just deny that they

9  have done anything wrong.'"  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001),

10  quoting, *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).   Therefore, "[a] pleading is

11  sufficient under Rule 9(b) if it identifies 'the circumstances constituting fraud so that the defendant

12  can prepare an adequate answer from the allegations.'"  *Gottreich v. San Francisco Inv. Corp.*, 552

13  F.2d 866, 866 (9th Cir. 1977), quoting, *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir.

14  1973).

15          Here, ARE has satisfied its burden by alleging the circumstancing constituting Defendants'

16  fraud.  ARE has provided specific allegations concerning the statements Del Mar made that were

17  fraudulent, when the statements were made, and why the statements were fraudulent.   The

18  allegations of paragraphs 10-13 spell out the precise statements that Del Mar made to ARE to

19  induce it to enter into the Sales Agreement; these allegations are more than specific enough to give

20  Defendants notice of the wrongdoing against which it must defend.  Furthermore, the complaint

21  identifies a precise date when the statements were made by Del Mar, alleging the statements were

22  made during a proposal it made to ARE "[o]n or about September 11, 2006."   (Compl., ¶10)

23  Finally, the complaint identifies precisely why the statements were false. (*See* Compl., ¶¶18-22)

24          Defendants argue that ARE should be required to allege facts as to how Defendants acted

25  with any intent to defraud ARE; this element, however, is **specifically excluded** from the

26  particularity requirement. *F.R.C.P. 9(b)* ("Malice, intent, knowledge, and other conditions of a

27  person's mind may be alleged generally.")   Furthermore, ARE alleges Defendants made these

28

8

1  misrepresentations in an effort to induce ARE to enter into the Sales Agreement; as a result, ARE

2  has alleged facts sufficient to demonstrate an inference of scienter.  See *Oestreicher v. Alienware*

3  *Corp.*, 544 F.Supp.2d 964, 968 (N.D. Cal. 2008).

4  **D.    ARE's Complaint Certainly Should Not be Dismissed Without Leave to Amend**

5  As demonstrated above, ARE has sufficiently alleged its causes of action for fraud in the

6  inducement, negligent misrepresentation, and breach of contract against both Fiserv and Del Mar.

7  However, in the event the Court accepts any of Defendants' arguments, ARE should be given leave

8  to amend its complaint.

9  A Court "should freely give leave to amend when justice so requires."  *F.R.C.P. 15(a)(2)*;

10  see *Deadmon v. Grannis*, No. 06-cv-1382-LAB (WMC), 2008 WL 595883, at *3 (S.D. Cal. Feb.

11  29, 2008).  If a motion to dismiss is granted for failure to state a claim, leave to amend should be

12  granted unless the plaintiff "could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-*

13  *Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986).

14  Obviously ARE contends there are no deficiencies in its complaint.  If the Court disagrees,

15  however, ARE should be given an opportunity to amend its complaint in accordance with the

16  Court's decision.

17  **IV.    CONCLUSION**

18  For the foregoing reasons, ARE respectfully requests the Court deny Defendants' partial

19  motion to dismiss.  Alternatively, ARE should be given leave to amend its complaint.

20  DATED:  July 8, 2008                     Submitted by,

21                                           SHUSTAK FROST & PARTNERS, P.C.
22                                           ERWIN J. SHUSTAK
                                             ROBERT L. HILL
23

24                                           s/Robert Hill
                                             ROBERT L. HILL
25                                           401 West "A" Street, Suite 2330
                                             San Diego, CA 92101
26                                           Telephone: (619) 696-9500
                                             Facsimile: (619) 615-5290
27
                                             Attorneys for Plaintiff American Residential
28                                           Equities, L.L.C.

9